[945 NE2d 1013, 920 NYS2d 763]

FIELDSTON PROPERTY OWNERS ASSOCIATION, INC., Plaintiff, v
HERMITAGE INSURANCE COMPANY, INC., Respondent, and
FEDERAL INSURANCE COMPANY, Sued Herein as CHUBB
GROUP OF INSURANCE COMPANIES, Appellant. (Action No. 1.)

HERMITAGE INSURANCE COMPANY, INC., Respondent, v FIELD-
STON PROPERTY OWNERS ASSOCIATION, INC., et al., Defend-
ants, and FEDERAL INSURANCE COMPANY, Appellant. (Action
No. 2.)

Argued January 11, 2011; decided February 24, 2011

## POINTS OF COUNSEL

*Hogan & Hartson LLP (Jonathan A. Constine*, of the District of Columbia bar, admitted pro hac vice, of counsel), and *Hogan & Hartson LLP*, New York City (*Katherine M. Bolger* and *Rachel F. Strom* of counsel), for appellant. The Appellate Division's decision is contrary to this Court's precedent concerning the scope of the duty to defend and the application of policy language. (*Raymond Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 5 NY3d 157; *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208; *Caporino v Travelers Ins. Co.*, 62 NY2d 234; *Government Empls. Ins. Co. v Kligler*, 42 NY2d 863; *Nationwide Mut. Ins. Co. v Travelers Ins. Co.*, 8 AD3d 861; *Frontier Insulation Contrs. v Merchants Mut. Ins. Co.*, 91 NY2d 169; *Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 281 AD2d 107, 98 NY2d 435; *Hirschhorn v Town of Harrison*, 210 AD2d 587; *Marshall v Tower Ins. Co. of N.Y.*, 44 AD3d 1014; *B&W Heat Treating Co., Inc. v Hartford Fire Ins. Co.*, 23 AD3d 1102.)

*Gold, Stewart, Kravatz, Benes & Stone, LLP*, Westbury (*Jeffrey B. Gold, James F. Stewart* and *Max W. Gershweir* of counsel), for respondent. I. The "same risk" rule dictates that the policies' "other insurance" clauses do not apply to the claims against Fieldston Property Owners Association, Inc., with one possible exception, and thus to that extent, Federal Insurance Company must reimburse Hermitage Insurance Company, Inc., for its equitable share of Fieldston's defense costs. (*Sport Rock Intl., Inc. v American Cas. Co. of Reading, Pa.*, 65 AD3d 12, 14 NY3d 796; *Great N. Ins. Co. v Mount Vernon Fire Ins. Co.*, 92 NY2d 682; *NL Indus., Inc. v Commercial Union Ins. Co.*, 935 F Supp 513; *Pennsylvania Manufacturers' Assn. Ins. Co. v Liberty Mut. Ins. Co.*, 39 AD3d 1161; *HRH Constr. Corp. v Commercial Underwriters Ins. Co.*, 11 AD3d 321; *State of New York v Blank*, 27 F3d 783; *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208; *State Farm Fire & Cas. Co. v LiMauro*, 65 NY2d 369; *Cheektowaga Cent. School Dist. v Burlington Ins. Co.*, 32 AD3d 1265; *Soho Plaza Corp. v Nationwide Mut. Ins. Co.*, 244 AD2d 184.) II. This Court should reject Federal Insurance Company's improper attempt to argue for the first time that the Hermitage Insurance Company, Inc. policy covers the injurious falsehood claims. (*Snyder v Wetzler*, 84 NY2d 941; *Bingham v New York City Tr. Auth.*, 99 NY2d 355.)

**OPINION OF THE COURT**

CIPARICK, J.

This appeal involves two declaratory judgment actions relating to a dispute between two insurers—Hermitage Insurance Company, Inc. (Hermitage) and Federal Insurance Company (Federal)*—over their respective responsibility for the cost of defending Fieldston Property Owners Association, Inc. (Fieldston), the insurers' mutual insured, against two underlying actions. Specifically, we are asked to determine whether the "other insurance" clauses in the two applicable insurance policies require Hermitage to bear the entire defense costs in the two underlying actions against Fieldston. Based on the language of the policies, we conclude that Hermitage had the primary duty to defend Fieldston, to the exclusion of any duty owed by Federal.

I.

Hermitage issued a Commercial General Liability (CGL) policy to Fieldston for the period July 5, 2000 to July 5, 2001. The "per occurrence" CGL policy provides coverage for "bodily injury," "property damage," and "personal and advertising injury" as defined in the policy, among other things. The "other insurance" clause of Hermitage's CGL policy provides, as relevant here:

> "If other valid and collectible insurance is available to the insured for a loss we cover . . . our obligations are limited as follows:
>
> "a. Primary Insurance.
>
> "This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described [herein].
>
> "b. Excess Insurance.
>
> "This insurance is excess over [certain types of insurance not relevant here]."

Federal issued an "Association Directors and Officers Liability" (D&O) policy covering the policy period from February 13, 1999 to February 13, 2002. The D&O policy is a "claims

---

* Federal was apparently improperly originally named as "Chubb Group of Insurance Companies" in the first declaratory judgment action.

made" policy providing coverage for "wrongful acts," as that term is broadly defined in the policy, committed by the directors and officers of Fieldston. The D&O policy also covers certain enumerated "offenses" committed before or during the policy period. The "other insurance" clause of Federal's D&O policy provides:

> "If any Loss arising from any claim made against the Insured(s) is insured under any other valid policy(ies) prior or current, then this policy shall cover such Loss, subject to its limitations, conditions, provisions, and other terms, only to the extent that the amount of such Loss is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the limits provided in this policy."

"Loss" is defined in Federal's D&O policy to mean "the total amount which the Insured(s) becomes legally obligated to pay on account of all claims made against it for Wrongful Acts with respect to which coverage hereunder applies, including . . . Defense Costs."

By letter dated April 20, 2001, nonparty Chapel Farm Estates (Chapel Farm) informed Fieldston that Fieldston's officers had been making "false statements and fraudulent claims" with respect to Chapel Farm's "right to access its property from" adjacent public streets. Specifically, Chapel Farm claimed that, in statements "given broad publication to a number of . . . community groups and elected officials," including statements made at a meeting of the Community Board's Land Use Committee, Fieldston made false claims as to Chapel Farm's ability to access certain property over "private streets" purportedly owned by Fieldston for the purpose of a construction project. Chapel Farm thereafter commenced an action against Fieldston and its officers in federal district court asserting several causes of action, including "injurious falsehood," and seeking damages, among other remedies. Some of the facts and events described in the complaint apparently related to events that occurred during the D&O policy period, but not during the CGL policy period.

By letter dated October 30, 2001, Hermitage demanded that Federal acknowledge its coverage obligations to Fieldston for defense of the Chapel Farm's federal action. Specifically, Hermitage stated:

"The complaint makes reference to a variety of alleged wrongful acts which are not covered under [the CGL] policy. Seven out of the eight causes of action in the complaint involve allegations that are clearly related to D&O issues and we feel that [Federal] has a primary defense obligation under [its] policy."

The letter also stated that "it appears that only the cause [of action] for injurious falsehood might trigger a defense obligation under" the CGL policy. Relying on its "other insurance" clause, Federal refused to provide coverage for defense costs. Thereafter, Hermitage agreed to defend Fieldston in the Chapel Farm federal action under a full reservation of its rights.

Shortly after the federal action was dismissed in August 2003, Chapel Farm—by then known as Villanova Estates, Inc. (Villanova)—filed an action in Supreme Court. Although the state action included more causes of action, the operative facts stated therein were nearly identical to the federal action, except that the new complaint included additional, later-occurring events. The eighteenth cause of action set forth an injurious falsehood claim; the remaining causes of action sought declaratory and injunctive relief and damages related to Fieldston's purported interference with Villanova's (formerly known as Chapel Farm) property rights, among other things. As with the federal complaint, some of the operative events allegedly occurred when the D&O policy, but not the CGL policy, was in effect.

By letter dated October 24, 2003, Hermitage reserved its right to deny coverage for the Villanova action, specifically advising Fieldston that only the injurious falsehood cause of action was potentially covered. However, Hermitage, once again, agreed to defend Fieldston, subject to a full reservation of its rights, including the right to seek reimbursement from Federal for the cost of the defense. Again relying on its "other insurance" clause, Federal disclaimed coverage, asserting that its coverage for the defense costs of the Villanova action was excess to Hermitage's policy.

In the state action, Fieldston successfully moved to dismiss certain causes of action, including the injurious falsehood claim. After the partial dismissal of the state action was affirmed on appeal (23 AD3d 160 [1st Dept 2005]), Hermitage demanded that Federal provide a defense as to the remaining causes of action. Federal conceded and assumed the defense of the state action.

These two declaratory judgment actions ensued, seeking to establish the respective defense cost responsibilities of Hermitage and Federal. Fieldston commenced the first action against both insurers to establish their obligation to cover the defense costs of the underlying Chapel Farm federal action. Supreme Court granted Federal's motion for summary judgment dismissing Hermitage's cross claims against it and denied Hermitage's cross motion for summary judgment (2006 NY Slip Op 30541[U]). Supreme Court concluded, in relevant part, that the "other insurance" clauses in the respective policies rendered Hermitage the primary and Federal the excess insurer as to the defense costs of the federal action. Hermitage appealed.

The second declaratory judgment action was brought by Hermitage against Federal seeking reimbursement—in full or on an equitable basis—for the costs incurred in defending the underlying Villanova action. In a separate order, Supreme Court denied Federal's motion and Hermitage's cross motion for summary judgment (2007 NY Slip Op 34405[U]). In relevant part, Supreme Court concluded that neither Hermitage nor Federal had demonstrated their respective positions as a matter of law. Hermitage appealed, and Federal cross-appealed, from the second Supreme Court order.

The Appellate Division in the first action reversed, on the law, denied Federal's motion for summary judgment, granted Hermitage's cross motion for summary judgment, and declared that Federal is required to reimburse Hermitage for its equitable share of defending the federal Chapel Farm action. In the second action, it modified, on the law, to the extent of granting Hermitage's cross motion for summary judgment and declaring that Hermitage is entitled to recover from Federal its equitable share of defending the Villanova state action, except to the extent that those costs related to the injurious falsehood claims (*Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc.*, 61 AD3d 185 [1st Dept 2009]). The Appellate Division rejected Federal's argument, reasoning:

> "With the possible exception of the injurious false-hood claims, all the other losses (including defense costs) that could result from the other causes of action are not insured under the CGL policy but at least some of them are insured under the D&O policy. Accordingly, the 'other insurance' clause [in the D&O policy] is inapplicable to the risks of all

other such losses, and the D&O policy thus provides primary coverage with respect to some of those risks. In other words, putting aside that possible exception, the CGL and D&O policies do not provide concurrent coverage as they do not insure against the same risks" (*id.* at 191).

The Appellate Division granted Federal leave to appeal to this Court, certifying the following question: "Was the order of this Court . . . properly made?" We now reverse and answer the certified question in the negative.

## II.

In resolving insurance disputes, we first look to the language of the applicable policies (*see Raymond Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 5 NY3d 157, 162 [2005]). If the plain language of the policy is determinative, we cannot rewrite the agreement by disregarding that language (*see id.*). Here, the parties have conceded at least the possibility that both Hermitage's CGL and Federal's D&O policies cover the injurious falsehood claims in the two underlying actions. Thus, based on the "other insurance" clauses, Hermitage's CGL policy is primary to Federal's D&O policy as they relate to defense costs. The question presented distills to whether the Hermitage policy's primacy on the injurious falsehood claim triggers a primary duty to defend against the remaining causes of action in the two complaints, thus preempting any obligation by Federal. We say it does.

An insurer's duty to defend is liberally construed and is broader than the duty to indemnify, "in order to ensure [an] adequate . . . defense of [the] insured," without regard to the insured's ultimate likelihood of prevailing on the merits of a claim (*General Motors Acceptance Corp. v Nationwide Ins. Co.*, 4 NY3d 451, 456 [2005]; *see also Automobile Ins. Co. of Hartford v Cook*, 7 NY3d 131, 137 [2006]). As we have explained on multiple occasions, the insurer's duty to defend its insured "arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy" (*Fitzpatrick v American Honda Motor Co.*, 78 NY2d 61, 65 [1991]; *see also BP A.C. Corp. v One Beacon Ins. Group*, 8 NY3d 708, 714 [2007]). Moreover, if " 'any of the claims against an insured arguably arise from covered events, the insurer is required to defend the entire action' " (*Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 98 NY2d 435,

443 [2002], quoting *Frontier Insulation Contrs. v Merchants Mut. Ins. Co.*, 91 NY2d 169, 175 [1997] [emphasis added and brackets omitted]). It is "immaterial that the complaint against the insured asserts additional claims which fall outside the policy's general coverage" (*id.* at 444 [citation, internal quotation marks and brackets omitted]).

In the context of primary and excess insurance, we have explained that a "primary insurer 'has the primary duty to defend on behalf of its insureds' " (*General Motors*, 4 NY3d at 455, quoting *General Acc. Fire & Life Assur. Corp. v Piazza*, 4 NY2d 659, 669 [1958] [brackets omitted]), and it generally has no " 'entitlement to contribution from an excess insurer' " (*id.* at 456, quoting *Firemen's Ins. Co. of Washington, D.C. v Federal Ins. Co.*, 233 AD2d 193 [1st Dept 1996], *lv denied* 90 NY2d 803 [1997]). Although an excess insurance carrier may elect to participate in an insured's defense to protect its interest, it has "no obligation to do so" (*id.*).

As relevant here, Federal's D&O policy provides that its coverage is excess where "any Loss arising from any claim made against the Insured(s) is insured under any other valid policy(ies)." "Loss" as defined in the D&O policy includes "Defense Costs." Based on the broad duty to defend, and upon the conceded possibility that Hermitage's CGL policy covers at least one cause of action in each of the two underlying complaints, Hermitage has a duty to provide a defense to the entirety of both complaints (*see e.g. Town of Massena*, 98 NY2d at 443-444). Thus, under the terms of Federal's D&O policy, there does exist "other insurance" which would cover the "loss" arising from the defense of the two underlying actions. Accordingly, Hermitage had an obligation to defend both of the underlying actions without contribution from Federal (*see Firemen's Ins. Co.*, 233 AD2d at 193; *Sport Rock Intl., Inc. v American Cas. Co. of Reading, Pa.*, 65 AD3d 12, 21 [1st Dept 2009], citing *State Farm Fire & Cas. Co. v LiMauro*, 65 NY2d 369, 373 [1985]), notwithstanding the fact that Federal would appear to have an obligation to indemnify Fieldston for a greater proportion of the causes of action, if successfully prosecuted.

We acknowledge that the result reached by the Appellate Division has much equitable appeal. If the policies were drafted using different language, we might hold differently, but we may not judicially rewrite the language of the policies at issue here to reach a more equitable result (*see e.g. Raymond Corp.*, 5 NY3d at 162).

Accordingly, the order of the Appellate Division should be reversed, with costs; in action No. 1, the judgment of Supreme Court should be reinstated, in action No. 2, defendant Federal Insurance Company's motion for summary judgment should be granted, and the certified question should be answered in the negative.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.