■ QBE INSURANCE CORPORATION, Respondent, v JINX-PROOF INC., Doing Business as BEAUTY BAR, et al., Appellants, et al., Defendant. [959 NYS2d 19]—Order, Supreme Court, New York County (Salliann Scarpulla, J.), entered August 17, 2011, which granted plaintiff's motion for summary judgment declaring that it is not obligated to defend defendant Jinx-Proof, Inc. in the underlying action, and denied Jinx-Proof's motion for summary judgment dismissing the complaint as against it, modified, on the law, to declare that plaintiff is not obligated to defendant Jinx-Proof in the underlying action, and otherwise affirmed, without costs.

Friedman and Román, JJ., concur in a separate memorandum by Friedman, J., as follows: While the relevant facts are more

fully set forth in Justice Manzanet-Daniels's concurring writing, what I find conclusive for the determination of this appeal are the following undisputed points: (1) the liability policy issued by plaintiff QBE Insurance Corporation to defendant Jinx-Proof Inc. contained an assault-and-battery exclusion; (2) in early 2008, when QBE issued the two letters to Jinx-Proof (quoted in pertinent part by Justice Manzanet-Daniels) on which QBE now relies in disclaiming any further duty to defend or indemnify with regard to the underlying barroom incident, the negligence and Dram Shop Act claims potentially covered by the QBE policy (in addition to an assault claim within the exclusion) were still pending against Jinx-Proof in the underlying personal injury action; and (3) in April 2010, the court in the underlying action dismissed the negligence and Dram Shop Act claims, which left pending against Jinx-Proof only the assault claim clearly within the QBE policy's assault-and-battery exclusion. On these undisputed facts, QBE is entitled to a declaration that, now that all potentially covered claims in the underlying action have been dismissed, it has no further duty to defend or indemnify Jinx-Proof in that lawsuit.

I emphasize that my vote in favor of the insurer's position under the particular circumstances of this case does not mean that an insurer is generally permitted to assume the defense of a case under a purported reservation of the right to disclaim liability or deny coverage as to any claim at a later time.[1] Rather, in this particular case, QBE's use of the term "reservation of rights" in the letters upon which it relies should not be deemed to negate its otherwise clear and unambiguous disclaimer of coverage of claims falling within the policy's assault-and-battery exclusion because, at the time the letters were issued, QBE was, in fact, obligated to defend even claims falling within that exclusion, and had no right simply to wash its hands of such claims by issuing a disclaimer.[2]

To reiterate, in early 2008, when the letters on which QBE relies were issued, negligence and Dram Shop Act claims potentially covered by the subject policy were still pending

---

1. Generally, with respect to a claim arising from death or bodily injury, a liability insurer is required to give the insured written notice of a disclaimer of liability or denial of coverage "as soon as is reasonably possible" (Insurance Law § 3420 [d] [2]), and the time within which to issue such a disclaimer or denial cannot be extended by reserving the right to do so in the future (*see Allstate Ins. Co. v Gross*, 27 NY2d 263 [1970]).

2. QBE relies on two letters, one issued three days after it received notice of the claim from Jinx-Proof and the other issued 29 days after it received such notice. Since the first letter was clearly timely, I see no need to address the timeliness of the second letter.

against Jinx-Proof in the underlying action. In view of the broad allegations supporting those claims, it cannot be said that the pleading in the underlying action is "cast . . . solely and entirely within the [assault-and-battery] policy exclusion[ ], and . . . that the allegations, *in toto*, are subject to no other interpretation" (*Automobile Ins. Co. of Hartford v Cook*, 7 NY3d 131, 137 [2006] [internal quotation marks omitted]). Accordingly, while those negligence claims potentially within the scope of its coverage were pending, QBE was obligated to defend Jinx-Proof in the underlying action, given that an insurer's duty to defend is "broader than [its] duty to indemnify" (*Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc.*, 16 NY3d 257, 264 [2011]) and that the duty to defend "arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy" (*id.* [internal quotation marks omitted]). Moreover, and most critically here, QBE's duty to defend, while it was in effect, extended even to claims that fell within the assault-and-battery exclusion (for which it would have no duty to indemnify). As the Court of Appeals has explained, "if *any* of the claims against an insured arguably arise from covered events, the insurer is required to defend the entire action" (*id.* [internal quotation marks omitted]), and "[i]t is immaterial that the complaint against the insured asserts additional claims which fall outside the policy's general coverage" (*id.* at 265 [internal quotation marks omitted]).

In view of the foregoing principles, because the complaint in the underlying action pleaded claims against the insured potentially within the scope of QBE's coverage, QBE was obligated to defend the entire action—including claims within the scope of the assault-and-battery exclusion—until the potentially covered claims were dismissed. Thus, at the time Jinx-Proof tendered its defense to QBE, QBE had no right simply to disclaim any duty with regard to the claims falling within the scope of the exclusion. This being the case, QBE had no choice, upon tender of Jinx-Proof's defense, but to reserve its right to invoke the assault-and-battery exclusion at such future time as it might become entitled to do so. Once the potentially covered claims were dismissed, QBE had no further obligations to Jinx-Proof with respect to the remaining claims against it, all of which fall within the exclusion, which QBE had timely invoked upon tender of the claim. Accordingly, Supreme Court correctly granted QBE's motion for summary judgment declaring its duty to defend and indemnify Jinx-Proof to be at an end. I note that we are modifying the order appealed from only to issue the declaration to which QBE is entitled.

Sweeny and Manzanet-Daniels, JJ., concur in a separate memorandum by Manzanet-Daniels, J., as follows: Plaintiff, Jinx-Proof's insurer, adequately disclaimed coverage based on the policy exclusion for assault and battery. I would therefore affirm the order.

It is undisputed that the event giving rise to Hendrix's injuries and Jinx-Proof's alleged liability was an assault on the premises of the bar owned by Jinx-Proof. Hendrix instituted suit against Jinx-Proof and individuals involved in the alleged assault in December 2007. Jinx-Proof notified plaintiff of the suit on January 28, 2008. Three days later, by letter dated January 31, 2008, plaintiff's claims administrator responded:

"This company will promptly and diligently attempt to ascertain factual information to help us in establishing if this late notice has in any way handicapped our ability to investigate and defend this claim . . . As soon as we can obtain the information, you will be notified of our decision.

"Furthermore, we are making this reservation of rights because your policy specifically excludes coverage for actions and proceedings to recover damages for bodily injuries arising from assault and batteries. . . . Consequently . . . *QBE Insurance Company will not be defending or indemnifying you under the General Liability portion of the policy for the assault and battery allegations. Accordingly, we suggest that you consult an attorney in order to protect your interests and provide a defense for the assault and battery claim*" (emphasis added).

On February 26, 2008, plaintiff's claims administrator sent another letter to its insured, stating: "[W]e are defending this matter under the Liquor Liability portion of the CGL coverage, and under strict reservation of rights for allegations of Assault and Battery. Your policy excludes coverage for assault and battery claims. . . . Therefore, should this matter proceed to verdict, any awards by the Court stemming from allegations of Assault and Battery will not be covered under your Commercial General Liability policy."

Thereafter, upon defendants' motion for partial summary judgment in the underlying action, the court dismissed Hendrix's claims against Jinx-Proof for negligent hiring, supervision and training, and violation of the Dram Shop Act. The order was never appealed.

Plaintiff, on November 15, 2010, commenced this action seeking a declaration that it was not obligated to defend or indemnify Jinx-Proof and Hendrix in the underlying action. The court granted plaintiff's motion for a declaration that it was not obligated to defend or indemnify Hendrix and Jinx-Proof, find-

ing that "the underlying incident . . . falls within the assault and battery exclusion of the insurance policy" and that the January 31, 2008 and February 26, 2008 letters served as effective written notices of disclaimer.

I would affirm. The disclaimers, issued three days and one month after receipt of notice from the insured, were timely. Moreover, the letters, taken individually and collectively, apprised the insured in no uncertain terms that coverage was barred by the assault and battery exclusion contained in the policy.[3] Although "reservation of rights" language may have appeared in the letters, the letters clearly state that "QBE Insurance Company will not be defending or indemnifying you under the General Liability portion of the policy for the assault and battery allegations," and "should this matter proceed to verdict, any awards by the Court stemming from allegations of Assault and Battery will not be covered under your Commercial General Liability policy." Such statements cannot be construed by a reasonable person as anything other than a disclaimer of coverage on the ground of the exclusion for assault and battery. Notwithstanding the allegedly "contradictory" language, the letters "specifically disclaimed coverage and sufficiently informed the defendants [of the basis for] the disclaimer" (*see Blue Ridge Ins. Co. v Jiminez*, 7 AD3d 652, 653 [2004] [disclaimer effective notwithstanding fact that letter purported to reserve rights as well as to disclaim coverage]).[4]

Further, no reasonable person would have an expectation of

---

**3.** To the extent any negligence claims survive, they, too, arose from the assault and are subject to the assault and battery exclusion (*see Metalios v Tower Ins. Co. of N.Y.*, 77 AD3d 471 [1st Dept 2010], citing *Mount Vernon Fire Ins. Co. v Creative Hous.*, 88 NY2d 347, 353 [1996] [assault and battery exclusion bars claims for negligence where no cause of action would exist "but for" an assault, and notwithstanding fact that a third party not employed by the owner of the establishment had perpetrated the assault]). The exclusion, by its terms, "applies regardless of the degree of culpability or intent," and "without regard to 1. [w]hether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person; 2. [t]he alleged failure of the insured or his officers, employees, agents or servants in the hiring, supervision, retention or control of any person . . . ; 3. [t]he alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct."

**4.** The dissent's discussion of informal judicial omissions misses the point. As the case relied on by the dissent notes, an informal judicial omission is a "*fact[ ]* incidentally admitted during the trial or in some other judicial proceeding" (*Matter of Union Indem. Ins. Co. of N.Y.*, 89 NY2d 94, 103 [1996] [emphasis added], citing Prince, Richardson on Evidence § 8-219 at 529 [Far-

coverage under the circumstances. Liability policies, in accordance with public policy, indemnify persons for the unexpected and unforeseen consequences of negligent acts; they do not afford coverage for intentional acts. It is not even clear, under the circumstances of this case, whether a disclaimer was necessary, given that an intentional act would not constitute an "occurrence" within the meaning of the policy. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general or harmful conditions." In any event, to the extent a disclaimer was necessary, the January 31, 2008 and February 26, 2008 letters sufficiently disclaimed coverage. Since no coverage exists under the policy, plaintiff is under no duty to defend or indemnify, and the order appealed from should be affirmed.

Andrias, J.P., dissents in a memorandum as follows: I do not believe that either plaintiff-insurer's January 31, 2008 or February 26, 2008 letters, both of which plaintiff styled as a reservation of rights, may serve as an effective written notice of disclaimer of coverage of the assault and battery based claims against defendant Jinx-Proof in the underlying litigation. Therefore, I dissent and would modify the order on appeal to deny plaintiff's motion for summary judgment and to declare that plaintiff is obligated to defend Jinx-Proof in the underlying action.

Defendant Vera Hendrix commenced the underlying action to recover for injuries she allegedly sustained on August 25, 2007, when, during an altercation in a bar, defendant Garret Alarcon, a security guard employed by Jinx-Proof, threw a glass at her face. Plaintiff initially undertook the defense of the underlying litigation pursuant to a commercial general liability (GCL) policy it issued to Jinx-Proof. In November 2010, after Hendrix's negligent hiring and supervision and Dram Shop Act claims in the underlying action were dismissed, it commenced this action seeking a declaration that it is not obligated to defend or indemnify any of the defendants on the surviving claims, based on an assault and battery exclusion contained in the policy.

A "disclaimer pursuant to [Insurance Law §] 3420 (d) is necessary when denial of coverage is based on a policy exclusion

rell 11th ed 1995]). Whether plaintiff's letter constituted a sufficient disclaimer is, of course, a legal question (*compare Union Indem. Ins. Co.*, 89 NY2d at 103 [misrepresentations concerning operations and financial condition of company admissible as informal judicial admissions]; *Performance Comercial Importadora E Exportadora Ltda v Sewa Intl. Fashions Pvt. Ltd.*, 79 AD3d 673, 673-674 [1st Dept 2010] [admission that company was agent for a party to the litigation]).

without which the claim would be covered" (*Matter of Worcester Ins. Co. v Bettenhauser*, 95 NY2d 185, 188-189 [2000]). "[O]nce the insurer has sufficient knowledge of facts entitling it to disclaim, or knows that it will disclaim coverage, it must notify the policyholder in writing as soon as is reasonably possible" (*First Fin. Ins. Co. v Jetco Contr. Corp.*, 1 NY3d 64, 66 [2003]). A "[f]ailure to comply with section 3420 (d) precludes denial of coverage based on a policy exclusion" (*Worcester Ins. Co.*, 95 NY2d at 189), "even if that ground would otherwise have merit" (*Adames v Nationwide Mut. Fire Ins. Co.*, 55 AD3d 513, 515 [2d Dept 2008]).

Supreme Court correctly determined that the GCL policy would have provided the claimed coverage but for the assault and battery exclusion and that therefore a timely disclaimer was necessary (*see Penn-America Group v Zoobar, Inc.*, 305 AD2d 1116 [4th Dept 2003], *lv denied* 100 NY2d 511 [2003]; *Columbia Cas. Co. v National Emergency Servs.*, 282 AD2d 346 [1st Dept 2001]). However, the court erred when it found that plaintiff's January 31, 2008 and February 26, 2008 reservation of rights letters served as effective written notices of disclaimer.

A notice of disclaimer should be "unequivocal[ and] unambiguous written notice, properly served" (*Norfolk & Dedham Mut. Fire Ins. Co. v Petrizzi*, 121 AD2d 276, 277 [1st Dept 1986], *lv denied* 68 NY2d 611 [1986]). "A reservation of rights letter may be used to rebut a claim that the carrier waived the right to disclaim by defending its insured" (*New York Cent. Mut. Fire Ins. Co. v Hildreth*, 40 AD3d 602, 606 [2d Dept 2007]), but it does not qualify as a timely disclaimer and "has no relevance to the question whether the insurer has timely sent a notice of disclaimer of liability or denial of coverage" (*Hartford Ins. Co. v County of Nassau*, 46 NY2d 1028, 1029 [1979]; *see also NYAT Operating Corp. v GAN Natl. Ins. Co.*, 46 AD3d 287, 288 [1st Dept 2007], *lv denied* 10 NY3d 715 [2008]).

By its own terms, the January 31, 2008 letter is clearly a reservation of the right to disclaim, not a disclaimer. In the letter, plaintiff advised Jinx-Proof that "[b]ased on the information presently available to us, *it is possible* your policy with our company may not provide coverage," and that "*we are making this reservation of rights* because your policy specifically excludes coverage for actions and proceedings to recover damages for bodily injuries arising from assault and batteries" (emphasis added). Thus, plaintiff did not definitively disclaim coverage, but rather reserved its right to do so.

In the February 26, 2008 letter, plaintiff confirmed that the January 31, 2008 letter was a reservation of rights, stating that

"[a]s previously stated in our Reservation of right letter to you dated January 31, 2008 we are defending this matter under the Liquor Liability portion of the CGL coverage, and under strict reservation of rights for allegations of Assault and Battery." In its verified complaint, plaintiff describes the February 26, 2008 letter as a "reservation of rights letter"; this constitutes a formal judicial admission (*see e.g. Performance Comercial Importadora E Exportadora Ltda v Sewa Intl. Fashions Pvt. Ltd.*, 79 AD3d 673, 673-674 [2010]). In addition, plaintiff's counsel's affidavit stating that plaintiff "did not issue a denial" constitutes an informal judicial admission that the letter was intended as a reservation of rights, not a disclaimer (*see e.g. Matter of Union Indem. Ins. Co. of N.Y.*, 89 NY2d 94, 103 [1996]).

The majority believes that these admissions are immaterial and that the January 31, 2008 and February 26, 2008 letters served as effective notices of disclaimer in that they apprised Jinx-Proof in no uncertain terms that coverage was barred by the assault and battery exclusions of the policy. However, the letters are far from clear.

The January 31, 2008 letter stated that plaintiff "will not be defending or indemnifying you under the General Liability portion of the policy for the assault and battery allegations." However, it mistakenly stated that there was no liquor liability coverage under the policy and concluded that plaintiff was "reserv[ing] *all* rights under the policy" and that Jinx-Proof "ha[d] the right to accept or reject this Reservation of Rights agreement" (emphasis added).

The February 26, 2008 letter stated that "[y]our policy excludes coverage for assault and battery claims." However, it only advised Jinx-Proof that "should this matter proceed to verdict, any awards by the Court stemming from allegations of Assault and Battery will not be covered under your Commercial General Liability policy." It did not state that no defense would be provided, or that coverage would not exist if the matter were settled or resolved by means other than a verdict.

The February 26, 2008 letter also advised Jinx-Proof that "contrary to [the January 31, 2008] letter, your CGL policy does maintain Liquor Liability coverage with limits as stated." The letter did not detail the scope of that coverage, which is a separate coverage part and not a mere portion of the commercial liability coverage part, and did not state whether the assault and battery conclusion applied to the liquor liability coverage. Further, the February 26, 2008 letter was not sent to the injured party (*see Markevics v Liberty Mut. Ins. Co.*, 97 NY2d 646, 648-649 [2001]).

Accordingly, neither of plaintiff's admitted reservation of rights letters, which contain contradictory and confusing language, can be construed as an unequivocal and unambiguous disclaimer of coverage. Because plaintiff failed to timely disclaim coverage based on its policy exclusion, it should be obligated to defend Jinx-Proof, in the underlying action. **[Prior Case History: 2011 NY Slip Op 32237(U).]**