OPINION OF THE COURT
Jack M. Battaglia, J.
This insurance coverage dispute arises out of an action commenced in this court on January 12, 2011, in which plaintiffs *437 Yelena Neizvestny and Valeriy Neizvestny seek damages for personal injury allegedly sustained by plaintiff Yelena on August 20, 2010 as a result of a trip-and-fall on a sidewalk on Avenue U in Brooklyn. Initially, the defendants were S.M.M.B. Realty Inc., the alleged owner of the premises at 2319 Avenue U, and John Abadiotakis and Christian Abadiotakis, who allegedly owned, leased, or otherwise controlled the premises at 2323 Avenue U. Plaintiffs alleged that Yelena, “while walking on the sidewalk abutting the two aforesaid premises, . . . was caused to trip and fall as a result of a dangerous condition of the sidewalk” (see verified complaint ¶ 25).
On May 9, 2011, plaintiffs filed an amended verified complaint that added as defendants Mei Juan Lin and Number 1 Chinese Restaurant, the alleged lessees of the street-level floor at 2319 Avenue U, where they were operating a restaurant on August 20, 2010. The allegation as to plaintiff Yelena Neizvestny’s trip- and-fall remained as quoted above (see amended verified complaint ¶ 40).
Neither party to this coverage action describes the course of proceedings in the underlying action. The court’s computerized database, however, shows that a note of issue was filed on December 12, 2012, and that the action was settled at trial before another justice on February 2, 2014. This court has no additional information about the settlement, but it seems clear that indemnification for the amount of the settlement and the cost of defense are now the focus of this coverage action.
Although not apparent from their complaint against defendant Greenwich Insurance Company, plaintiff Leading Insurance Group Insurance Company, Ltd. provided liability coverage to plaintiff S.M.M.B. Realty Inc. for the period June 11, 2010 to June 11, 2011, and has been defending S.M.M.B. in the underlying trip-and-fall action. Their complaint seeks a judgment declaring that Greenwich Insurance was required to defend S.M.M.B. in the underlying action, and is required to indemnify S.M.M.B. from any judgment, pursuant to a liability policy Greenwich issued to Mei Juan Lin d/b/a No. 1 Chinese Restaurant for the period June 19, 2010 to June 19, 2011, which policy also provides coverage to “SMMB Realty Inc” as an additional insured.
By letter dated July 5, 2011, counsel for S.M.M.B. Realty tendered the defense of the underlying trip-and-fall action to Mei Juan Lin. By letter dated August 5, 2011, York Claims Services, acting for Greenwich Insurance, declined the tender on *438 the ground that “it is unclear at this time if [Yelena Neizvestny] in fact fell in front of our insured’s premises or the other co-defendants [sic] in the matter and as such it [sic] premature to accept any tender.” By letters dated September 28, 2011 and October 16, 2012, S.M.M.B.’s counsel demanded defense and indemnity directly from Greenwich. By letter dated December 17, 2012, York Claims Services denied the tender on behalf of Greenwich; unlike the earlier denial, no mention was made of uncertainty as to where Ms. Neizvestny fell.
Defendant Greenwich Insurance now moves for an order, pursuant to CPLR 3211 (a) (1) and (7), dismissing plaintiffs’ complaint, relying upon the provisions of the insurance policy Greenwich issued to Mei Juan Lin, d/b/a No. 1 Chinese Restaurant and the provisions of the lease between S.M.M.B. Realty Inc. and Mei Juan Lin’s assignor. Plaintiffs Leading Insurance and S.M.M.B. Realty cross-move for an order, pursuant to CPLR 3212, granting them summary judgment on their complaint, also relying on the Greenwich policy and the lease. The court is treating both motions as motions for summary judgment. The parties rely primarily on the documents and legal argument; an affidavit of Francine Feimster, submitted by plaintiffs, adds nothing material. As conceived by the parties, the “dispute involves . . . only issues of law argued by all parties,” and the “respective submissions of [the] parties demonstrate that they are laying bare their proof’ (see Hendrickson v Philbor Motors, Inc., 102 AD3d 251, 258-259 [2d Dept 2012]).
The court is aware that Greenwich Insurance also submits the transcripts of examinations before trial of Yelena Neizvestny, Brian Sarfati for S.M.M.B. Realty, and Mei Juan Lin, all taken in the underlying personal injury action. None of the transcripts is signed by the deponent, or shown to have been submitted to the deponent for signature pursuant to CPLR 3116 (a), but the transcripts are certified by the respective reporters, and the court assumes that the transcripts would be admissible as evidence on a motion for summary judgment in the underlying action (see Pavane v Marte, 109 AD3d 970, 970-971 [2d Dept 2013]). The court also assumes that, should any of those deponents testify at a trial in this action, the transcript of that deponent’s examination before trial may be used for impeachment by prior inconsistent statement (see CPLR 4514).
There is no showing here, however, that those deposition transcripts can serve as evidence in this action, as to which they are hearsay. Moreover, there is no showing that any such *439 testimony would be relevant to the meaning and application of the insurance policy issued by Greenwich Insurance to Mei Juan Lin, d/b/a No. 1 Chinese Restaurant, even if Greenwich’s motion were to be considered pursuant to CPLR 3211 (a) (1) and (7). Deposition transcripts are not “documentary evidence” for purposes of CPLR 3211 (a) (1) (see Cives Corp. v George A. Fuller Co., Inc., 97 AD3d 713, 714 [2d Dept 2012]); and, assuming that deposition testimony is admissible on a motion pursuant to CPLR 3211 (a) (7) for “fail[ure] to state a cause of action” (see Quiroz v Zottola, 96 AD3d 1035, 1037-1038 [2d Dept 2012]), the deposition testimony submitted here does not demonstrate that no significant dispute exists with respect to any pleaded fact (see id. at 1037).
As summarized by defendant Greenwich Insurance, “[t]he instant declaratory judgment action must be dismissed as the insurance policy issued by Greenwich to Mei Juan Lin d/b/a/ No. 1 Chinese Restaurant does not provide any coverage for S.M.M.B. Realty Inc., as the policy specifically excludes structural repairs”; and, “[flurther, pursuant to the applicable lease agreement . . . Mei Juan Lin d/b/a No. 1 Chinese Restaurant was not responsible for structural repairs to the sidewalk.” (Affirmation in support ¶¶ 5, 6.) The reference to “the applicable lease agreement” is to an agreement of lease dated September 1, 1992 between S.M.M.B. Realty Corp. and Chun Jung Chang for occupancy of the “First Floor Store and Basement” at 2319 Avenue U. On June 17, 2009, the lease was assigned to Mei Juan Lin, with the consent of S.M.M.B. Realty.
Despite the extensive attention paid by Greenwich Insurance to the respective rights and obligations of S.M.M.B. Realty as landlord and Mei Juan Lin d/b/a No. 1 Chinese Restaurant as tenant under their lease agreement, the respective rights and obligations of S.M.M.B. Realty and Greenwich Insurance are determined by the policy issued to the tenant that named the landlord as an additional insured. The applicable endorsement, “Additional Insured-Managers or Lessors of Premises,” reads in its entirety as follows:
“This endorsement modifies insurance provided under the following:
“COMMERCIAL GENERAL LIABILITY
“COVERAGE PART
“SCHEDULE
“1. Designation of Premises (Part Leased to You):
*440 “2. Name of Person or Organization (Additional Insured):
“SMMB Realty Inc.
“402 Travis Avenue
“Staten Island, NY 10314
“3. Additional Premium: INCL.
“WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:
“This insurance does not apply to:
“1. Any ‘occurrence’ which takes place after you cease to be a tenant in that premises.
“2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.”
The Commercial General Liability Coverage Schedule refers to the schedule of locations for the location of premises, and the schedule of locations states only “2319 Avenue U, Brooklyn, NY 11229.” Neither Greenwich Insurance nor plaintiffs cite to any provision of the Greenwich policy that explicitly and specifically addresses the sidewalk abutting 2319 Avenue U; nor do they point to any provision of the policy that incorporates or refers to the lease between the insured and the additional insured for the meaning or application of any policy provision for coverage or exclusion.
Because Greenwich Insurance devotes much unnecessary effort in attempting to show that Mei Juan Lin as tenant was not obligated under his lease with S.M.M.B. Realty Corp. to make “structural” repairs to the sidewalk, it is worth noting that Mei Juan Lin presumably obtained the Greenwich policy, and named S.M.M.B. Realty as an additional insured, so as to discharge his obligation to obtain liability insurance for S.M.M.B.’s benefit (see lease agreement ¶ 8; rider ¶ 45). Mei Juan Lin separately agreed to indemnify S.M.M.B. for loss to S.M.M.B. “as a result of any breach by Tenant ... of any covenant on [sic] condition of [the] lease, or the carelessness, negligence or improper conduct of the Tenant” (see id. ¶ 8). Greenwich agreed to insure this contractual liability as well (see Commercial General Liability Coverage Form, Section I, Coverage A, ¶ 2 [b] [2] [a]; Section II, ¶ 9 [a]).
*441 “An agreement to procure insurance is not an agreement to indemnify or hold harmless, and the distinction between the two is well recognized.” (Kinney v Lisk Co., 76 NY2d 215, 218 [1990].) “A contractual provision which requires that a party be named as an additional insured in a liability policy has been interpreted to mean that the additional insured is insured for all liability arising out of the activities covered by the agreement.” (Pecker Iron Works of N.Y. v Traveler’s Ins. Co., 290 AD2d 426, 427 [2d Dept 2002] [internal quotation marks and citation omitted].) Here, the insurance-procurement clause is “entirely independent of the indemnification provision” (see McGill v Polytechnic Univ., 235 AD2d 400, 402 [2d Dept 1997]); and there is nothing to indicate that the liability insurance intended was limited only to S.M.M.B.’s liability as owner for the negligent acts of Mei Juan Lin as tenant (see Murray v Curtis Co., 189 AD2d 980, 982 [3d Dept 1993]). In any event, the liability coverage obtained by Mei Juan Lin was not so limited.
In determining the meaning of the Greenwich policy, the court must rely on the general principles governing the interpretation and application of insurance policies. “In resolving insurance disputes, we look first to the language of the applicable policies.” (Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc., 16 NY3d 257, 264 [2011].) “If the plain language of the policy is determinative, we cannot rewrite the agreement by disregarding that language.” (Id.) “[U]nambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court.” (Vigilant Ins. Co. v Bear Stearns Cos., Inc., 10 NY3d 170, 177 [2008] [internal quotation marks and citation omitted].) “Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage.” (Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98 NY2d 208, 218 [2002].)
“An insurer’s duty to defend its insured is exceedingly broad” (Regal Constr. Corp. v National Union Fire Ins. Co. of Pittsburgh, PA, 15 NY3d 34, 37 [2010] [internal quotation marks and citations omitted]), and “is broader than the duty to indemnify” (see Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc., 16 NY3d at 264). “If a complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend.” (Regal Constr. Corp. v National Union Fire Ins. Co. of Pittsburgh, PA, 15 NY3d at 37 [internal quotation marks, brackets, and citation omitted].)
*442 “When an insurer seeks to disclaim coverage on the . . . basis of an exclusion, . . . the insurer will be required to provide a defense unless it can demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation.” (Automobile Ins. Co. of Hartford v Cook, 7 NY3d 131, 137 [2006] [internal quotation marks and citation omitted].)
“[A]n insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course.” (BP A.C. Corp. v One Beacon Ins. Group, 8 NY3d 708, 714 [2007] [internal quotation marks and citation omitted].)
The “exceedingly broad” duty to defend “applies equally to additional insureds and named insureds.” (See Regal Constr. Corp. v National Union Fire Ins. Co. of Pittsburgh, PA, 15 NY3d at 37.) “[A]n additional insured is a recognized term in insurance contracts”; “the well-understood meaning of the term is an entity enjoying the same protection as the named insured.” (BP A.C. Corp. v One Beacon Ins. Group, 8 NY3d at 714-715.)
Conspicuously absent from the papers submitted by Greenwich Insurance is any indication that Greenwich has disclaimed coverage of its insured, Mei Juan Lin d/b/a No. 1 Chinese Restaurant, for the underlying trip-and-fall action, either as to defense or indemnification, or that Greenwich has sought a declaration as to its obligations to its insured under the same policy that provides coverage to the additional insured, S.M.M.B. Realty.
Again, the additional insured endorsement provides coverage to S.M.M.B. Realty “but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased” to the insured as shown in the schedule. There is also an “additional exclusion” for “[structural alterations . . . performed by or on behalf of’ the additional insured. It is arguable based upon the “additional exclusion” language that the limitation of liability found in the “but only” clause is to be treated as an exclusion on which the insurer would bear the burden. The court assumes, however, for purposes of this motion, that the “but only” limitation substantially relates to coverage, on which the insured bears the burden.
“[T]he phrase ‘arising out of in an additional insured clause . . . mean[s] originating from, incident to, or having connection *443 with.” (See Regal Constr Corp. v National Union Fire Ins. Co. of Pittsburgh, PA, 15 NY3d at 38 [internal quotation marks and citation omitted].) This “definition” is not particularly helpful in resolving the instant dispute, although it confirms a broader reading of coverage language in insurance policies.
“[U]nder New York law, the coverage afforded by a premises liability policy extends by implication to that portion of an outside sidewalk necessary for access to the covered premises.” (Antoine v City of New York, 56 AD3d 583, 585 [2d Dept 2008].) The leading authority is the opinion of the Court of Appeals in ZKZ Assoc. v CNA Ins. Co. (89 NY2d 990, 991 [1997]):
“As an additional insured under the policy issued to Guardian . . . , plaintiff building owner was covered ‘only for liability arising out of the ownership, maintenance and use of that part of the described premises which is leased to [Guardian].’ . . . [T]he ambiguous ‘additional insured’ endorsement . . .
“gave plaintiff at least a right to an insurer-sponsored defense in the action that was brought against it for injuries sustained by a pedestrian who allegedly tripped and fell on the sidewalk outside its building. The part of the sidewalk where the alleged accident occurred was necessarily used for access in and out of the garage Guardian operated and was thus, by implication, ‘part of the . . . premises’ that Guardian was licensed to use under the parties’ agreement. Consequently, the claim arose out of ‘the ownership, maintenance [or] use of’ the garage.” (See also Dewars Mgt. Co. Inc. v Great N. Ins. Co., 2001 NY Slip Op 40254[U] [App Term, 1st Dept 2001].)
Although ZKZ Assoc. explicitly addressed only the insurer’s duty to defend, it has been relied upon to find a duty to indemnify as well. (See Ambrosio v Newburgh Enlarged City School Dist., 5 AD3d 410, 412 [2d Dept 2004]; Stein v 1394 Hous. Corp., 31 Misc 3d 1224[A], 2011 NY Slip Op 50813[U] [Sup Ct, NY County 2011].)
Greenwich Insurance attempts to resist the clear effect of these authorities with an argument, based factually upon reference to the inadmissible deposition transcripts, that Yelena Neizvestny fell on a portion of the sidewalk in front of 2319 Avenue U that was not “necessarily used for access in and out of” the restaurant (see ZKZ Assoc. v CNA Ins. Co., 89 NY2d at 991). Apparently, the building frontage at 2319 Avenue U *444 includes both the door to the restaurant and a door leading to apartments above the restaurant; and, at her deposition, Ms. Neizvestny indicated the location of her fall on the pavement in front of the door leading to the apartments.
Even if, however, the deposition transcripts were admissible, the precise location of Ms. Neizvestny’s fall on the sidewalk in front of 2319 Avenue U would be immaterial, as would be any contention that liability for her fall would not be covered because she was not entering or leaving the restaurant. It is obvious that the entire sidewalk in front of 2319 Avenue U is necessary for access to or from the restaurant, even though a customer would use only a portion of the sidewalk entering or leaving as determined by the intended direction of travel on Avenue U.
Greenwich Insurance argues further that S.M.M.B. Realty is not covered on the underlying trip-and-fall action because of the exclusion for “substantial alterations . . . performed by or on behalf of’ the additional insured. “[E]xclusions are subject to strict construction and must be read narrowly.” (Automobile Ins. Co. of Hartford v Cook, 7 NY3d at 137.) An insurer will be permitted to avoid policy coverage only if the exclusion is “subject to no other reasonable interpretation.” (See Dean v Tower Ins. Co. of N.Y., 19 NY3d 704, 708 [2012].)
Greenwich Insurance points to no allegation in the underlying action that Yelena Neizvestny’s alleged trip-and-fall was caused by any “alteration” to the sidewalk made by S.M.M.B. Realty, whether “structural” or “non-structural.” Nor does Greenwich Insurance provide any evidence that Ms. Neizvestny’s alleged injury was in fact caused by some “alteration” or repair by S.M.M.B. Realty (see Nahar v Socci, 112 AD3d 592 [2d Dept 2013]). The attempt by Greenwich Insurance to convert an exclusion for “structural alterations” into an exclusion for “structural defects” is not supported by the English language usually and reasonably understood.
To the extent, therefore, that plaintiffs’ cross motion seeks a summary declaration that the liability policy issued to Mei Juan Lin d/b/a No. 1 Chinese Restaurant by Greenwich Insurance Company, under which S.M.M.B. Realty is an additional insured, imposes duties of defense and indemnification to S.M.M.B. Realty with respect to the underlying trip-and-fall action, the motion must be granted.
That is not the end of it, however, even as to plaintiff S.M.M.B. Realty, because Greenwich Insurance contends that, *445 even if it does owe defense and indemnification duties to S.M.M.B. Realty with respect to the underlying trip-and-fall action, so does plaintiff Leading Insurance Group Insurance Company, Ltd., such that the two insurers must share S.M.M.B. Realty’s defense costs and any judgment or settlement. Greenwich relies on an “Other Insurance” provision that, as plaintiffs correctly point out, applies to the Commercial Property Coverage Part of the policy it issued to Mei Juan Lin d/b/a No. 1 Chinese Restaurant.
The Greenwich policy contains the following “Other Insurance” provision as part of the Commercial General Liability Coverage Form, Coverage A, which applies to liability for bodily injury:
“4. Other Insurance
“If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
“a. Primary Insurance
“This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance . . .
“b. Excess Insurance
“(1) This insurance is excess over:
“(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:
“i. That is Fire, Extended Coverage, Builder’s Risk, Installation Risk or similar coverage for ‘your work’;
“ii. That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
“iii. That is insurance purchased by you to cover your liability as a tenant for ‘property damage’ to premises rented to you or temporarily occupied by you with permission of the owner; or “iv. If the loss arises out of the maintenance or use of aircraft, ‘autos’ or watercraft . . .
“(b) Any other primary insurance available to you covering liability for damages arising our of the premises or operations, or the products and completed operations, for which you have been added as *446 an additional insured by attachment of an endorsement.”
Since none of the “Excess Insurance” provisions has been shown to be applicable, the liability insurance provided by the Greenwich policy is primary, and Greenwich’s “obligations are not affected unless any of the other insurance is also primary.”
The policy issued by Leading Insurance to S.M.M.B. Realty contains the following “Other Insurance” provision in the Business Owners Coverage Form, which applies to liability for bodily injury:
“H. Other Insurance
“1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not . . .
“2. Business Liability Coverage is excess over:
“a. Any other insurance that insures for direct physical loss or damage; or
“b. Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.
“3. When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or ‘suit’ that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured’s rights against all those other insurers.”
The affidavit of Francine Feimster, “a Claims Analyst for Leading Insurance Services, Inc., the U.S. Manager for Leading Insurance Group Co., Ltd.,” asserts that “[a]s a result of Greenwich’s improper tender denial, Leading has been forced to retain private defense counsel for SMMB in the Neizvestny Action” (see Feimster aff ¶ 6).
“Where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage . . . , priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective ‘other insurance’ clauses.” (Sport Rock Intl., Inc. v American Cas. Co. of Reading, Pa., 65 AD3d 12, 18 [1st Dept 2009]; see also Great N. Ins. Co. v Mount Vernon Fire Ins. Co., 92 NY2d *447 682, 686-687 [1999].) On that comparison, an “other insurance” clause like that in the Leading Insurance policy here, which declares that it is excess over another policy providing primary coverage for which the insured has been added as an additional insured, is given full effect where another policy, like the Greenwich Insurance policy here, contains a “pro rata ‘other insurance’ clause.” (See Sport Rock Intl., Inc. v American Cas. Co. of Reading, Pa., 65 AD3d at 15, 18-19; see also QBE Ins. Corp. v Public Serv. Mut. Ins. Co., 102 AD3d 442, 443 [1st Dept 2013].)
“The reasoning behind the rule is that, because a pro rata clause applies only in the presence of other primary insurance, there is no conflict between a primary policy containing a pro rata clause and a second primary policy containing an excess clause rending the latter excess to other primary insurance.” (Sport Rock Intl., Inc. v American Cas. Co. of Reading, Pa., 65 AD3d at 19-20.)
The upshot is, as to plaintiff S.M.M.B. Realty, that, as an additional insured under the Greenwich policy, S.M.M.B. is entitled to a declaration that Greenwich is obligated to provide defense and indemnification to S.M.M.B. on a primary basis, limited, of course, to the policy limits.
As to plaintiff Leading Insurance Group Insurance Company, Ltd., no showing has been made that “Greenwich has an obligation to reimburse plaintiff [Leading Insurance] for the costs, fees, disbursements, and settlements paid on [S.M.M.B. Realty’s] behalf in the underlying [trip-and-fall] action” (see notice of cross motion dated Jan. 24, 2014). Most important, among other reasons, is that the underlying action has apparently been settled, but no documentation or information about a settlement has been provided to the court, and, in any event, no mention of settlement appears anywhere in plaintiffs’ complaint.
The motion of defendant Greenwich Insurance Company is denied.
The cross motion of plaintiffs Leading Insurance Group Insurance Company, Ltd. and S.M.M.B. Realty Inc. is granted only to the extent that judgment shall enter declaring that defendant Greenwich Insurance Company is obligated to defend and indemnify plaintiff S.M.M.B. Realty Inc., subject to the terms, conditions, and limitations of the insurance policy issued by Greenwich to Mei Juan Lin d/b/a No. 1 Chinese Restaurant, *448 with respect to the action commenced against S.M.M.B. Realty in this court under index No. 763/11; but entry of judgment shall be stayed pending further order of the court.