# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**913**

**CA 10-02278**

PRESENT: CENTRA, J.P., PERADOTTO, CARNI, GREEN, AND GORSKI, JJ.

---

CRANE-HOGAN STRUCTURAL SYSTEMS, INC.,
CLAIMANT-RESPONDENT,

V                                      MEMORANDUM AND ORDER

STATE OF NEW YORK, DEFENDANT-APPELLANT.
(CLAIM NO. 110250.)

---

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (OWEN DEMUTH OF
COUNSEL), FOR DEFENDANT-APPELLANT.

GATES & ADAMS, P.C., ROCHESTER (ANTHONY J. ADAMS, JR., OF COUNSEL),
FOR CLAIMANT-RESPONDENT.

---

Appeal from a judgment of the Court of Claims (Philip J. Patti, J.), entered August 12, 2010. The judgment awarded claimant money damages for breach of contract, after a trial.

It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by reducing the award of $1,399,589.87 to $489,992.24 and as modified the judgment is affirmed without costs.

Memorandum: Claimant commenced this action seeking damages for defendant's breach of a construction contract. Defendant contracted with claimant to rehabilitate the Veterans Memorial Bridge in Rochester for the sum of $18,535,215.42. The project involved partial removal and repair of the bridge deck and supporting beams and was to be completed by September 30, 1999. While the work was underway, the parties discovered that the bridge was in greater disrepair than the plans had reflected, and defendant halted construction in approximately May 1998. Thereafter, defendant issued new plans calling for, inter alia, the complete removal and replacement of the bridge deck, shoring of the bridge deck and removal and replacement of bridge beams. The new plans required additional labor and equipment and extended the construction time frame from 2½ years to 4½ years.

While the parties negotiated claimant's compensation for the additional work, claimant agreed to proceed by "force account," i.e., on a time and materials basis, pursuant to the Standard Specifications of the Department of Transportation (Standard Specifications). The Standard Specifications provided that, "[w]here there are no applicable unit prices for extra work ordered and agreed prices cannot be readily established or substantiated, the [c]ontractor shall be paid the actual and reasonable cost" of necessary materials, labor,

payroll taxes and insurance payments, sales tax, equipment, profit and overhead. The force account method required claimant to complete detailed forms listing labor, equipment and materials used on a daily, weekly and monthly basis. Claimant submitted proposed unit pricing to defendant in 1998 and 1999 but received no response, and claimant was ultimately advised that defendant had decided not to consider unit pricing for the additional work. As a result, the work proceeded entirely according to the force account method, with claimant reserving its right to seek additional compensation from defendant.

After claimant had completed the project and defendant had accepted the work on March 11, 2002, claimant sought additional compensation from defendant in the amount of $2,203,058.75, which included $693,314.56 in project or field overhead and $964,937.60 in corporate or home office overhead. According to claimant, 63.5% of those overhead costs were incurred completing work set forth in the original contract (hereafter, contract work), while 36.5% of those costs were incurred performing force account work, which is the subject of this action. In response to claimant's request, defendant issued a change order or "order on contract" in the amount of $612,400.58 for "time related dispute compensation," i.e., compensation for costs incurred beyond the expected contract completion date. That amount included $450,265 or 63.5% of the amount claimant sought for project overhead, representing the portion of the project overhead claim allocable to the contract work. Defendant refused to pay the remaining 36.5% of the claim attributable to force account work. Defendant also paid claimant $45,026.50 in corporate overhead, i.e., 10% of the amount that it awarded in project overhead, as well as $49,529.15 in profit, i.e., 10% of the amounts awarded for project and corporate overhead, based upon the Standard Specifications.

Claimant thereafter commenced this action seeking damages in the amount of $1,432,624.65, plus interest, for corporate overhead, project overhead, standby equipment and underutilized equipment. According to claimant, the project redesign "constitut[ed] a cardinal change to [its] contract" and, as a result, it "incurred significant additional costs for which it was not compensated, including additional labor, equipment and overhead[,] as well as lost profits." Claimant subsequently prepared a statement of damages in which it reduced the amount of damages sought to $1,367,795.54.

We note at the outset that defendant does not challenge the Court of Claims' determination that the redesigned project constituted a cardinal change to the contract or that quantum meruit is the proper measure of damages. Rather, defendant's sole contention is that the damages award of $1,399,589.87 with interest should be reduced. The court determined that claimant incurred "uncompensated costs" for home office overhead in the amount of $834,493.35, for project overhead in the amount of $189,909.46, for standby equipment in the amount of $63,242 and for underutilized equipment in the amount of $122,445, for a total amount of $1,210,089.81. In addition, the court determined that claimant was entitled to a " 'markup' " for overhead and profit in the amount of 15.66% of the uncompensated costs or $189,500.06.

     " 'On our review of a verdict after a bench trial, we
independently review the weight of the evidence and may grant the
judgment warranted by the record' " (*Charles T. Driscoll Masonry
Restoration Co., Inc. v County of Ulster*, 40 AD3d 1289, 1291; *see
Evans-Freke v Showcase Contr. Corp.*, 85 AD3d 961, 962-963).  As in any
contract action, claimant bears the burden of establishing its damages
(*see Manshul Constr. Corp. v Dormitory Auth. of State of N.Y.*, 79 AD2d
383, 387), and "damages are limited to awards based upon 'a definite
and logical connection between what is proven and the damages sought
to be recovered' " (*Clifford R. Gray, Inc. v State of New York*, 251
AD2d 728, 730).  In construction contract cases, "[t]he customary
method of calculating damages on a *quantum meruit* basis . . . is
actual job costs plus an allowance for overhead and profits minus
amounts paid" (*Najjar Indus. v City of New York*, 87 AD2d 329, 331-332,
*affd* 68 NY2d 943; *see Whitmyer Bros. v State of New York*, 47 NY2d 960,
962, *affg* 63 AD2d 103; *Miranco Contr., Inc. v Perel*, 57 AD3d 956,
958).

     We agree with defendant that the court erred in failing to credit
defendant for the amounts that it paid to claimant for overhead and
profit.  The record demonstrates, and claimant correctly concedes,
that defendant paid claimant $1,899,946.49 in markup for overhead and
profit through the force account procedure.  Indeed, defendant paid a
20% markup on labor costs, excluding overtime premiums, and materials
for all force account work, as well as a 25% markup on subcontracted
work.  The court, however, failed to take those payments into account
in its calculation of damages (*see generally Anthony L. Castiglia,
Inc. v City of Lockport*, 85 AD2d 879, *lv denied* 55 NY2d 608).  The
court then compounded its error by awarding an additional markup of
15.66%, which was the markup percentage actually realized by claimant
on the force account work, for "overhead and profit" on top of the
overhead costs that it awarded.  We agree with defendant that it was
duplicative for the court to award an additional markup for overhead
on top of overhead expenses (*see Whitmyer Bros.*, 63 AD2d at 108-109).
Further, the claim for project overhead already included a 20% markup
on wages and materials in the amount of $106,695.75.  Thus, the court
awarded overhead and profit upon an overhead figure that already
included a markup, presumably for profit.  That was error (*cf. Anthony
L. Castiglia, Inc.*, 85 AD2d 879).

     In our view, the court should have awarded damages based on the
direct cost of the force account work, plus the indirect costs
incurred by claimant and a reasonable allowance for profit, minus
payments made by defendant (*see generally Clifford R. Gray, Inc.*, 251
AD2d at 729-730).  We conclude that 13%, the percentage utilized by
claimant in preparing its bid, is a reasonable allowance for profit.
It is undisputed that the actual or direct cost of the work performed
via force account was $12,129,945.16.  With respect to indirect costs,
the court determined that claimant incurred costs in the amount of
$63,242 for standby equipment and $122,445 for underutilized
equipment.  Defendant has abandoned any challenge to those aspects of
the award on appeal (*see Ciesinski v Town of Aurora*, 202 AD2d 984),
and we adopt those amounts.  With respect to the award for project
overhead, plaintiff's original claim was $693,314.56 for contract work

and force account work.  From that amount, we deduct the markup of $106,695.75 included in the claim for project overhead, as well as the $53,140.10 in vehicle use included in the claim, which the court found to be unsupported by the evidence.  That brings the total amount claimed for project overhead on contract and force account work to $533,478.71.  Of that amount, claimant alleged that 36.5% is attributable to force account work, which results in a total of $194,719.73.  As for corporate overhead, the original claim was $929,049 for both contract and force account work.  Of that amount, claimant alleged that 36.5% is attributable to force account work, which results in a total of $339,102.88.  Thus, the total indirect costs attributable to the force account work is $719,509.61.  To the total direct costs in the amount of $12,129,945.16 and the indirect costs in the amount of $719,509.61, we add a 13% allowance for profit, i.e., $1,670,429.12, yielding a subtotal of $14,519,883.89 owed to claimant.  From that subtotal, we deduct $14,029,891.65, the amount that defendant paid via the force account procedure, which results in a sum of $489,992.24 owed to claimant.  We therefore modify the judgment accordingly.

Contrary to the further contention of defendant, we conclude that the court did not abuse its discretion in awarding interest from March 11, 2002, the date on which defendant accepted claimant's work under the contract, to September 11, 2002 (*see* CPLR 5001 [a]; *Pozament Corp. v AES Westover, LLC*, 51 AD3d 1080, 1080-1081; *see generally Precision Founds. v Ives*, 4 AD3d 589, 593).

Entered:  October 7, 2011                    Patricia L. Morgan
                                             Clerk of the Court