# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**122**

**CA 13-00513**

PRESENT: SCUDDER, P.J., FAHEY, PERADOTTO, LINDLEY, AND SCONIERS, JJ.

---

DRYDEN MUTUAL INSURANCE COMPANY,
PLAINTIFF-RESPONDENT,

V                                    MEMORANDUM AND ORDER

STANLEY GOESSL, ET AL., DEFENDANTS,
AP DAINO & PLUMBING, INC. AND THE MAIN STREET
AMERICA GROUP, DEFENDANTS-APPELLANTS.

---

KENNEY SHELTON LIPTAK NOWAK LLP, BUFFALO (JESSE J. COOKE OF COUNSEL),
FOR DEFENDANTS-APPELLANTS.

KNYCH & WHRITENOUR, LLC, SYRACUSE (PETER W. KNYCH OF COUNSEL), FOR
PLAINTIFF-RESPONDENT.

---

Appeal from a judgment (denominated order and judgment) of the
Supreme Court, Oswego County (James W. McCarthy, J.), entered October
29, 2012 in a declaratory judgment action. The judgment, among other
things, declared that plaintiff has no duty to defend or indemnify
defendant Stanley Goessl.

It is hereby ORDERED that the judgment so appealed from is
reversed on the law without costs and judgment is granted as follows:

It is ADJUDGED AND DECLARED that plaintiff is obligated
to defend and indemnify defendant Stanley Goessl in the
underlying action, and that plaintiff is obligated to
reimburse defendant Stanley Goessl for the reasonable
attorneys' fees and expenses he incurred in defending the
underlying action, and

It is further ADJUDGED AND DECLARED that defendant The
Main Street America Group is not obligated to defend or
indemnify defendant Stanley Goessl in the underlying action.

Memorandum: Plaintiff, Dryden Mutual Insurance Company,
commenced this action seeking a declaration that it is not obligated
to defend or indemnify defendant Stanley Goessl in the underlying tort
action pursuant to a business general liability insurance policy
(hereafter, Dryden policy) that it issued to Goessl, who was doing
business as S&K Plumbing. The underlying action arose from a fire at
a residence that occurred while Goessl was engaged in plumbing work
there. Plaintiff disclaimed coverage on the grounds that, inter alia,
Goessl was an employee of defendant AP Daino & Plumbing, Inc. (AP

Daino) and was acting within the scope of his employment at the time of the fire. AP Daino was insured by defendant The Main Street America Group (MSA) under a "contractors policy" (MSA policy). MSA disclaimed coverage on the ground that Goessl was not an employee of AP Daino at the time of the fire and therefore was not an "insured" within the meaning of the MSA policy. After a bench trial, Supreme Court issued a judgment declaring that plaintiff had no duty to defend or indemnify Goessl in the underlying action and that MSA had a duty to "defend and potentially indemnify" Goessl in that action. In addition, the court ordered MSA to reimburse plaintiff and Goessl for costs they had incurred relative to Goessl's defense in the underlying action. We conclude that the court erred, and instead conclude, inter alia, that plaintiff must indemnify Goessl in the underlying action while MSA has no such duty.

It is well settled that, "[o]n appeal from a judgment following a bench trial, this Court may independently consider the probative weight of the evidence and the inferences that may be drawn therefrom, and grant the judgment that we deem the facts warrant" (*Blakesley v State of New York*, 289 AD2d 979, 979, *lv denied* 98 NY2d 605; *see Crane-Hogan Structural Sys., Inc. v State of New York*, 88 AD3d 1258, 1260). "In determining a dispute over insurance coverage, we first look to the language of the policy" (*Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 221; *see Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc.*, 16 NY3d 257, 264). "As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning . . . , and the interpretation of such provisions is a question of law for the court" (*White v Continental Cas. Co.*, 9 NY3d 264, 267). "If the plain language of the policy is determinative, we cannot rewrite the agreement by disregarding that language" (*Fieldston Prop. Owners Assn., Inc.*, 16 NY3d at 264; *see White*, 9 NY3d at 267). "Unless otherwise defined by the policy, words and phrases are to be understood in their plain, ordinary, and popularly understood sense, rather than in a forced or technical sense" (*Hartford Ins. Co. of Midwest v Halt*, 223 AD2d 204, 212, *lv denied* 89 NY2d 813; *see Rocon Mfg. v Ferraro*, 199 AD2d 999, 999). Thus, "[t]he meaning of the language used in the policy must be found in the common sense and common speech of the average person" (*Stainless, Inc. v Employers Fire Ins. Co.*, 69 AD2d 27, 32-33, *affd* 49 NY2d 924; *see Canfield v Peerless Ins. Co.*, 262 AD2d 934, 934, *lv denied* 94 NY2d 757).

Here, we conclude that the Dryden policy unambiguously provides coverage for Goessl in the underlying action. The Dryden policy states that, "if the **named insured** is an individual, both the individual and his/her spouse are **insureds** but only with respect to the conduct of a **business** of which he/she is the sole proprietor." "Business" is broadly defined in the Dryden policy as "a trade, profession, or other occupation, including farming, all whether full or part time." The record in this case establishes that Goessl was the sole proprietor of S&K Plumbing and that, at the time of the fire, he was engaged in the conduct of his "trade, profession, or other occupation" as a plumbing subcontractor for AP Daino. Because the

injury in the underlying action allegedly arose out of the conduct of Goessl's plumbing business, plaintiff is obligated to defend and indemnify him in the underlying action (*see Cataract Sports & Entertainment Group, LLC v Essex Ins. Co.*, 59 AD3d 1083, 1084).

We reach the contrary conclusion with respect to the MSA policy. That policy provides that AP Daino's "employees" are insureds for acts committed "within the scope of their employment by [AP Daino] or while performing duties related to the conduct of [its] business." The term "employee" is not defined in the MSA policy, and should therefore be given its plain or ordinary meaning (*see Curry v Atlantic Mut. Ins. Co.*, 283 AD2d 937, 938, *lv denied* 96 NY2d 721). Where, as here, the dispute involves a business insurance policy, "[a]n important guidepost when interpreting [such] a . . . policy is to examine the reasonable expectation and purpose of the ordinary business [person] when making an ordinary business contract" (*Baughman v Merchants Mut. Ins. Co.*, 87 NY2d 589, 593 [internal quotation marks omitted]; *see Moshiko, Inc. v Sieger & Smith*, 137 AD2d 170, 176, *affd* 72 NY2d 945). Here, the record establishes that AP Daino and Goessl intentionally structured their business relationship as a long-term subcontracting arrangement rather than an employment relationship. AP Daino did not provide Goessl with health insurance or other employee benefits, and did not withhold taxes or pay social security or unemployment taxes on his behalf. Goessl determined his own hourly rate, submitted invoices to AP Daino on behalf of S&K Plumbing, and received a Form 1099-MISC, for miscellaneous income, as opposed to a W-2 wage statement. At AP Daino's request, Goessl obtained his own liability coverage, which is further evidence that neither party considered Goessl to be an "employee" under the MSA policy.

Although it is undisputed that Goessl was an insured under AP Daino's workers' compensation policy, the record indicates that the workers' compensation carrier required AP Daino to include uninsured subcontractors on its policy, and Goessl was listed as an uninsured subcontractor, not as an employee, on the policy. AP Daino initially asked Goessl to obtain his own workers' compensation policy, but Goessl was advised by his insurance carrier that he did not need such coverage because he was an independent contractor. Further, we conclude that the fact that AP Daino's owner, a master plumber, signed Goessl's journeyman's card as his "employer" and paid the required fee is insufficient to render Goessl an "employee" under the MSA policy. Goessl testified without contradiction that a master plumber is permitted to sign for a subcontractor or independent contractor.

Inasmuch as the record establishes that AP Daino and Goessl intentionally entered into a business arrangement whereby Goessl was an independent contractor rather than an employee, we conclude, upon our independent review of the record (*see generally Blakesley*, 289 AD2d at 979), that neither AP Daino nor Goessl expected that Goessl would be considered an "employee" under the MSA policy (*see generally Baughman*, 87 NY2d at 594). We thus conclude that Goessl is not insured under the MSA policy and, therefore, that MSA has no duty to defend or indemnify him in the underlying action (*see generally Farm Family Cas. Ins. Co. v Nason*, 89 AD3d 1401, 1402).

All concur except SCONIERS, J., who dissents and votes to affirm in the following Memorandum: I respectfully dissent because I conclude that Supreme Court properly determined, after conducting a nonjury trial, that defendant Stanley Goessl was an employee of defendant AP Daino & Plumbing, Inc. (AP Daino) and that defendant The Main Street America Group, which insured AP Daino, is obligated to "defend and potentially indemnify" Goessl in the underlying tort action arising from a fire at the residence of a customer of AP Daino. While it is a closer question, I also conclude that the court properly declared that plaintiff is not obligated to defend and indemnify Goessl, whom plaintiff insured as the sole proprietor of S&K Plumbing, in the underlying action.

It is well settled that, "[o]n an appeal from a judgment rendered after a nonjury trial, our scope of review is as broad as that of the trial court (see *Matter of Capizola v Vantage Intl.*, 2 AD3d 843, 844 [2003]). Upon such a review, the record should be 'viewed in the light most favorable to sustain the judgment' (*Farace v State of New York*, 266 AD2d 870, 871 [1999]; *see Parone v Rivers*, 84 AD2d 686 [1981]), and this Court should evaluate 'the weight of the evidence presented and grant judgment warranted by the record, giving due deference to the trial court's determinations regarding witness credibility, so long as those findings could have been reached upon a fair interpretation of the evidence' (*New York Tel. Co. v Harrison & Burrowes Bridge Contrs.*, 3 AD3d 606, 608 [2004] [internal quotation marks and citations omitted]). '[T]he decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses' (*Thoreson v Penthouse Intl.*, 80 NY2d 490, 495 [1992] [internal quotation marks omitted], *rearg denied* 81 NY2d 835 [1993])" (*Matter of City of Syracuse Indus. Dev. Agency [Alterm, Inc.]*, 20 AD3d 168, 170).

In my view, the court properly considered and gave appropriate weight to the evidence in determining that Goessl was an employee of AP Daino. Specifically, on the day of the fire, Goessl went to AP Daino's Central Square office, picked up a van, and drove his crew of AP Daino employees to the designated work site; Goessl previously was employed by AP Daino before being approached about working for AP Daino as an "independent contractor"; Goessl was paid on an hourly basis; Goessl performed the same type of work as other AP Daino employees; Goessl introduced himself to customers as "Stan from AP Daino"; and, in all respects, AP Daino directed the work, told Goessl where to go, and told him what to do. Also, Goessl worked 40 hours per week as a plumber for AP Daino and used AP Daino tools for that work. Notably, the underlying loss occurred in 2009 and, in 2010, Labor Law § 861-c was enacted and Workers' Compensation Law § 2 was amended precisely because "unscrupulous employers [were] intentionally reporting employees as independent contractors to state and federal authorities or workers' compensation carriers in record numbers" (NY Bill Jacket, 2010 S.B. 5847, ch 418). Moreover, Goessl's designation as an independent contractor by AP Daino for income tax reporting

purposes was improper (*see* Betty Wang, *IRS Cracking Down on 'Independent Contractors'*, http://blogs.findlaw.com/free_enterprise/2013/07/irs-cracking-down-on-independent-contractors.html, July 31, 2013 [accessed Apr. 23, 2014]; *see also* Robert W. Wood, *IRS Inspector Urges Crackdown On Mislabeling 'Independent Contractors'*, http://www.forbes.com/sites/robertwood/2013/07/30/irs-inspector-urges-crackdown-on-mislabeling-independent-contractors/, July 30, 2013 [accessed Apr. 23, 2014]).  As a result, I respectfully submit that the majority's rejection of the court's factual finding that Goessl was an employee of AP Daino is not only contrary to the well-settled standard that we apply when reviewing nonjury verdicts, but it is also contrary to the overwhelming evidence presented at trial and the strong public policy that militates against the improper and unscrupulous classification of employees as independent contractors.

With respect to the insurance policy that plaintiff issued to Goessl, I conclude that the language of that policy is not ambiguous and that Goessl was not "conduct[ing] . . . a *business* of which he[ ] is the sole proprietor" when he was working as an employee of AP Daino (emphasis added).  Notably, plaintiff insured Goessl as the sole proprietor of a plumbing business with no employees, and Goessl undoubtedly reported his business revenue, which would be used for underwriting purposes, only insofar as such revenue included payments for work performed for AP Daino, as well as the payments for the small amount of work he performed for his own customers.  At trial, Goessl described working on crews with one, two or possibly more AP Daino employees under circumstances where he sometimes supervised an apprentice plumber and where he, based on his experience, was the de facto foreman when working with other AP Daino employees.  If the majority's analysis is correct, Goessl would be potentially liable not only for his own negligence, but also for the negligence of AP Daino employees working on the same crew, thereby creating greater liability exposure for plaintiff than plaintiff knowingly contracted for.  While I see no merit to plaintiff's position that it had a right to disclaim coverage based on Goessl's willful misrepresentation, I conclude that plaintiff had a right to disclaim coverage because it expressly insured a one-person plumbing business, not a plumber who was employed by a much larger plumbing business.

Entered:  May 9, 2014                          Frances E. Cafarell
                                               Clerk of the Court