# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20633

United States Court of Appeals
Fifth Circuit

**FILED**

September 16, 2016

Lyle W. Cayce
Clerk

FEDERAL INSURANCE COMPANY,

Plaintiff–Appellant,

v.

NORTHFIELD INSURANCE COMPANY,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before KING, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Two insurance companies, Northfield Insurance Company (Northfield) and Federal Insurance Company (Federal), issued policies to Bryan C. Wagner. Wagner had previously obtained oil and gas properties in Louisiana from ExxonMobil Corporation, and Wagner agreed to indemnify and defend ExxonMobil against various claims and liabilities. Wagner and ExxonMobil were sued for damages in Louisiana by owners of land that is subject to these mineral rights, and ExxonMobil then sued Wagner in Texas state court seeking to enforce Wagner's alleged contractual obligations to ExxonMobil. In the present action, Federal acknowledges its duty to defend Wagner in ExxonMobil's suit, but Federal contends that Northfield also owes a duty to

No. 14-20633

defend Wagner, and Federal seeks a declaration to that effect as well as recovery of 50% of Wagner's defense costs.   The district court determined that Northfield was not obligated to defend Wagner because of a pollution exclusion clause in Northfield's policy.   We reverse and remand.

## I

Wagner obtained oil and gas interests in Louisiana from ExxonMobil. An Assignment, Bill of Sale and Quitclaim (to which we shall refer as the Assignment) governs the respective rights, obligations and liabilities of Wagner and ExxonMobil regarding those properties.  Three lawsuits have been filed in Louisiana by third parties against ExxonMobil and others regarding these properties (the Louisiana Litigation).   Wagner refused to defend or indemnify ExxonMobil in those suits.

In the ExxonMobil suit in Texas state court, ExxonMobil seeks a declaratory judgment that Wagner is "obligated to defend and indemnify Exxon Mobil Corporation from and against the claims asserted against it" in the Louisiana Litigation.   In its petition in Texas state court, ExxonMobil characterizes the Louisiana Litigation as asserting environmental damage and seeking restoration of the land.

Federal issued pollution liability insurance to Wagner, providing coverage from January 31, 2003 to January 31, 2010.  The policies obligated Federal to defend covered claims asserted against Wagner.   Federal is currently defending Wagner in the ExxonMobil Suit, and the terms of Federal's policies are not at issue.

Northfield issued Wagner a general liability policy effective for one year, from January 31, 1999 to January 31, 2000, as well as an umbrella policy for that period of time (collectively, the Northfield Policy).  Federal contends that the Northfield Policy requires Northfield to defend Wagner in the ExxonMobil suit and to reimburse Federal for a portion of the fees and expenses it has

incurred defending Wagner.  Northfield has refused to defend Wagner in the ExxonMobil suit, and Federal filed the current action against Northfield.

Both parties moved for summary judgment.  The district court granted Northfield's motion for summary judgment in part and denied Federal's motion for summary judgment.  The district court rejected Northfield's argument that Federal had failed to show that any property damage occurred during the one-year 1999-2000 policy period.  The district court reasoned that: "ExxonMobil's petition does not directly address the issue of when the damage allegedly occurred," that ExxonMobil's pleadings alleged facts that potentially came within the policy's period, and that "[t]he [c]ourt cannot say that the occurrence giving rise to the property damage . . . did not occur, at least in part, within the Policy period."

However, the district court held that the Pollution Endorsement relieves Northfield of the duty to defend Wagner in the ExxonMobil Suit,  reasoning that "[t]he language of the Pollution Endorsement is broad and clearly excludes coverage for damages arising from the 'environmental damage' and 'restoration and remediation' alleged in ExxonMobil's Petition."

Northfield's policy contains an Underground Resources & Equipment Buyback ("UREB") provision, which takes precedence over the Pollution Endorsement. The district court held that the UREB Endorsement "does not operate to restore coverage to Wagner in this instance."  The district court did not reach the question of whether the Contractual Liability exclusion in the policy relieves Northfield of a duty to defend Wagner, in light of the district court's conclusion that the Pollution Endorsement excluded coverage.  Federal appealed.

No. 14-20633

## II

Texas's law of contract interpretation applies in this diversity action.[1] "Insurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally,"[2] meaning that a court's primary concern in construing a written contract "is to ascertain the true intent of the parties as expressed in the instrument."[3] "An insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy."[4] In Texas, this is commonly referred to as the "eight-corners rule," which provides that "when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from the terms of the policy and the pleadings of the third-party claimant."[5] "The rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant."[6] "Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage."[7]

All doubts regarding the duty to defend are resolved in favor of the insured.[8] "Where the complaint does not state facts sufficient to clearly bring

---

[1] *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 n.3 (5th Cir. 2001) ("In diversity cases . . . we apply state law rules of construction.").

[2] *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam).

[3] *Id.*

[4] *Nat'l Union Fire Ins. Co of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam).

[5] *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006).

[6] *Id.* at 308.

[7] *Id.*

[8] *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

4

the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, *potentially*, a case under the complaint within the coverage of the policy."[9]  In other words, if there is doubt as to whether "the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor."[10]

"The insured bears the initial burden of showing that the claim against her is potentially within the insurance policy's scope of coverage."[11]  If an insurer relies on a policy's exclusions to deny that it has a duty to defend, "it bears the burden of proving that one or more of those exclusions apply."[12]  Courts must "construe the exclusion narrowly, resolving any ambiguity in favor of the insured."[13]  The facts alleged in the claim against the insured, not legal theories, control.[14]

## III

Federal first contends that the Pollution Endorsement does not exclude coverage of at least some potential claims ExxonMobil has made against Wagner. Our court has recognized that under Texas law, absent policy provisions to the contrary, "[e]ven if the plaintiff's complaint alleges multiple claims or claims in the alternative, some of which are covered under the policy

---

[9] *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 141 (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)) (emphasis added).

[10] *Id.* (quoting *Heyden Newport Chem. Corp.*, 387 S.W.2d at 26).

[11] *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001).

[12] *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 692 (5th Cir. 2010).

[13] *City of Coll. Station, v. Star Ins. Co.*, 735 F.3d 332, 337 (5th Cir. 2013) (citing *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008)).

[14] *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004).

and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage."[15]

The Northfield Policy's "Pollution Endorsement" excludes coverage for

> '[b]odily injury', 'property damage', 'personal injury', loss of, damage to or loss of use of property, or any other form of liability or damages to which any insured may be subject arising out of the actual, alleged, or threatened discharge, dispersal, release, seepage, migration or escape of pollutants at any time at any location by whomsoever caused.

The Pollution Endorsement defines "Pollutants" as

> any solid, liquid, gaseous or thermal irritant, contaminant or waste, including but not limited to saline, saltwater, smoke, vapors, soot, dust, fumes, acids, alkalis and chemicals. Waste includes any materials which are intended to be recycled, reconditioned or reclaimed, regardless of whether the waste has the effect of making something impure or hazardous.

It is certainly plausible that some of ExxonMobil's claims against Wagner may come within the terms of the Pollution Endorsement. For example, ExxonMobil seeks a declaration that "the Wagner Group has assumed all obligations and liabilities of ExxonMobil under all agreements insofar as they pertain to the assigned property, including but not limited to, all liabilities for the assessment, remediation, removal and disposal of hazardous substances . . . ." But because of the breadth and generality of the allegations in ExxonMobil's state court petition, we cannot say that all of the claims fall clearly within the exclusion.

ExxonMobil's petition does not attach any of the petitions in the Louisiana Litigation. ExxonMobil's petition provides very little information about the nature of the claims made in the Louisiana Litigation, for which ExxonMobil seeks indemnity and defense costs from Wagner. ExxonMobil's

---

[15] *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995).

petition asserts only that "[a]ll three lawsuits in the underlying [Louisiana] litigation allege environmental damage and seek restoration and remediation of the land subject to mineral rights purchased by the Wagner Group." ExxonMobil's petition also alleges that its agreements with Wagner "cover claims arising from ExxonMobil's alleged negligence, strict liability, and any obligation to comply with environmental statutes including the Clean Water Act." Similarly, ExxonMobil alleges that under its agreements with Wagner, "the Wagner Group is also responsible for the remediation and restoration of the assigned property." But these assertions do not clearly allege claims that are all excluded by the Pollution Endorsement.

Federal posits in its briefing in our court that "'Environmental damage,'" the words ExxonMobil used in its state court petition to describe some of its claims against Wagner, "may take many forms. For example, the negligent construction of facilities could have caused soil to erode during rainfall. Trucks or other operation of heavy machinery could have damaged vegetation or wildlife habitats." We agree with Federal that this type of "environmental damage" would not be excluded under the "Pollution Endorsement." We have no way of knowing at this juncture whether ExxonMobil is asserting claims such as the hypothetical ones described by Federal because we cannot look past the allegations in ExxonMobil's petition to ascertain whether all of the claims for which ExxonMobil seeks indemnity and defense costs are excluded under Northfield's policy. Accordingly, as the record currently stands, ExxonMobil has alleged potential claims against Wagner that are not clearly excluded by the Pollution Endorsement. The district court should not have granted summary judgment in favor of Northfield on the basis of that exclusion.

## IV

Federal asserts in the alternative that even if the Pollution Endorsement were to exclude coverage, ExxonMobil's allegations against Wagner are

covered by his Northfield policy because of the "Underground Resources & Equipment Buyback" (the UREB) Endorsement. We consider this alternative claim in the interest of judicial economy, in the event that subsequent allegations by ExxonMobil result in the application of the Pollution Endorsement to ExxonMobil's claims against Wagner.

The UREB endorsement states that it "applies to 'property damage' included within the 'underground resources & equipment hazard' arising out of the operations performed by you [Wagner] or on your [Wagner's] behalf and described in this endorsement." The UREB endorsement expressly supersedes the Pollution Endorsement. The UREB endorsement is not an exclusion but rather affirmatively extends coverage. Federal, seeking to assert Wagner's (the insured's) rights under the policy, bears the burden of establishing coverage.

Northfield maintains that the district court correctly construed and applied the UREB endorsement in holding:

> The Buyback only provides coverage for certain property damage "arising out of operations performed by **you** [the insured, Wagner Oil Group]." . . . ExxonMobil's Petition makes no allegations about operations by Wagner. Moreover, ExxonMobil is not an "assign" of Wagner. Rather, ExxonMobil seeks indemnity from Wagner based on the ExxonMobil's [sic] contractual assignment of duties to Wagner.
>
> Because there is no allegation in the Texas Suit that Wagner or others on Wagner's behalf performed the operations in issue, the UREC Buyback does not trigger Northfield's duty to defend in the Texas Suit.

We have carefully considered each of the allegations in ExxonMobil's petition that Federal asserts bring the claims against Wagner within this endorsement. Federal is at a loss to explain how the allegation that the three Louisiana suits "allege environmental damage and seek restoration and remediation of the land subject to mineral rights purchased by the Wagner

Group" relates to a claim for "property damage" within the "underground resources & equipment hazard." Federal also points to ExxonMobil's allegations that Wagner has breached its contractual obligations in various respects. But none of those allegations assert that ExxonMobil is seeking recovery for property damage that is included within the "underground resources & equipment hazard." The district court did not err in granting summary judgement in favor of Northfield as to this claim under the policy.

## V

The district court did not address Northfield's contention that the Contractual Liability Exclusion relieves Northfield from any obligation to defend Wagner in the ExxonMobil suit. Both insurers press their respective arguments regarding the Contractual Liability Exclusion in this court. We consider this issue because even if the Pollution Endorsement does not exclude coverage, Northfield would be entitled to summary judgment in its favor if the Contractual Liability Exclusion applies.

The insurers both agree that if it were not for an exception to the Contractual Liability exclusion, ExxonMobil's claims against Wagner would be excluded from Northfield's policy. Accordingly, the focus of the dispute over this provision in the policy is the exception to the exclusion. Under Texas law, "[o]nce the insurer proves that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion."[16] Federal therefore has the burden of proving that ExxonMobil's claims against Wagner come within the Northfield policy's exception to the Contractual Liability exclusion. The policy excludes coverage for:

> "Bodily injury" or "property damage" for which the **insured** is obligated to pay damages by reason of the assumption of liability

---

[16] *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999).

No. 14-20633

in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the **insured** would have in the absence of the contract or agreement.

(2    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **insured** are deemed to be damages because of "bodily injury" or "property damage," provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

The policy defines "Insured contract" as including:

f. That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

There is no dispute that Wagner assumed certain liabilities of ExxonMobil by virtue of the Assignment.  Northfield and Wagner agree that "the insured must assume the other contracting party's tort liability to third parties in order for insured contract coverage to attach."[17]  Northfield argues

---

[17] Douglas R. Richmond & Darren S. Black, *Expanding Liability Coverage: Insured Contracts and Additional Insured*s, 44 DRAKE L. REV. 781, 784 (1996); *see also Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011) ("'Insured contract' is a commonly used term of art in Texas insurance law, usually defined by the insurance policy to mean a separate contract that acts as insurance.").

that the claims in the ExxonMobil suit do not involve assumption of any tort liability but instead, ExxonMobil alleges only contractual obligations to clean up or restore property pursuant to mineral leases.  Northfield reasons that there is therefore no "insured contract."  We disagree.

ExxonMobil's petition in state court alleges that Wagner agreed in the Assignment "to indemnify, hold harmless, and defend [ExxonMobil] from and against all damages, losses, claims, demands, and causes of action . . . brought by any and all persons . . . on account of any personal injury, death, damage, destruction, [or] loss of property . . . ."  ExxonMobil also alleged that the Assignment provided that Wagner

> agree[s] to indemnify, defend, and hold [ExxonMobil, its employees, etc.] harmless from any and all claims, causes of action, fines, expenses, costs, losses, and liabilities whatsoever in connection with the environmental condition of the assigned property or other property affected thereby (including, but not limited to, their active, passive, joint, concurrent or sole negligence or strict liability) . . . .

ExxonMobil's petition alleges in the state action that "[t]hese clauses cover claims arising from ExxonMobil's alleged negligence, strict liability, and any obligation to comply with environmental statutes including the Clean Water Act."  The Assignment between ExxonMobil and Wagner is a contract under which Wagner assumed ExxonMobil's tort liability to third persons.

Northfield alternatively relies on the clause in the Insured Contract exclusion that provides that for the exception to the exclusion to apply, the bodily injury or property damage must have occurred "subsequent to the execution of the contract or agreement."  Northfield asserts that any property damage for which ExxonMobil could potentially have tort liability would have occurred before, not subsequent to, the execution of the Assignment between Wagner and ExxonMobil.  But logically, that is not necessarily so.  Conceivably, ExxonMobil's acts or omissions regarding conditions or hazards

on the properties could have caused property damage after the date that the Assignment was executed.  ExxonMobil could conceivably face tort claims for such conditions or hazards.  Because ExxonMobil's petition does not state the dates that the property damage at issue in the Louisiana Litigation occurred, there is no basis for concluding that all property damage occurred before the execution of the Assignment.  The exception to the Insured Contract exemption therefore applies for purposes of the duty to defend, based on the current record.[18]

*     *     *

For the reasons discussed above, the judgment of the district court is REVERSED, and this case is REMANDED to the district court.

---

[18] *See Zurich Am. Ins. Co v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) ("Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.").