# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 24, 2017

Lyle W. Cayce
Clerk

No. 16-50892

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, Syndicate BRIT2987 Subscribing to Policy Number BRIT13329,

> Plaintiff - Appellee

v.

STERLING CUSTOM HOMES, INCORPORATED,

> Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:15-CV-1032

Before HIGGINBOTHAM, GRAVES, and HIGGINSON, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:\*

This appeal concerns financial responsibility for losses caused by fire damage at a construction site. The general contractor's insurer has paid the general contractor, and has obtained a state-court judgment against a subcontractor for the damages.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-50892

Below, the district court ruled on summary judgment that the subcontractor's insurer owes no coverage for the losses. Because the district court adopted an erroneous interpretation of the subcontractor's insurance policy, we REVERSE the district court's summary judgment ruling, VACATE the final judgment, and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

Sterling Custom Homes, Inc. ("Sterling Homes"), the general contractor for a residential construction project in Austin, Texas, subcontracted with Silvestre Espinoza's painting company. The subcontracting agreement obligated Espinoza to obtain, and to name Sterling Homes as an additional insured under, a commercial general liability insurance policy.

Espinoza bought such a policy (the "Lloyd's policy") from Certain Underwriters at Lloyd's of London, Syndicate BRIT2987, Subscribing to Policy Number BRIT13329 ("the Syndicate"). An "additional insured endorsement" extended blanket additional insured coverage to other entities under the Lloyd's policy "as per written contract[s]."

In March 2015, a fire caused substantial damage to the construction project. Great American Assurance Company ("Great American"), the insurer responsible for Sterling Homes's builder's risk insurance policy, paid Sterling Homes approximately $1.28 million for losses related to the fire. Then, having become subrogated to Sterling Homes's rights, Great American filed a lawsuit in Texas state court in Sterling Homes's name against Espinoza.

The Syndicate soon filed a declaratory judgment action in the federal Western District of Texas. The Syndicate sought a declaration that (1) a provision in Espinoza's Lloyd's policy called the cross suits exclusion barred any coverage obligation in connection with Sterling Homes's state-court action against Espinoza, (2) the Syndicate owed no duty to defend Espinoza in that

2

No. 16-50892

suit, and (3) if the Lloyd's policy provides any coverage, coverage is limited to $100,000 under the policy's fire-damage provision.

The district court granted the Syndicate's motion for summary judgment. In its order, the district court declared that Espinoza's Lloyd's policy "does not provide coverage for the property damage arising out of the state court action" between Sterling Homes and Espinoza and ruled that the Syndicate "has no duty to defend" Espinoza in the state-court suit.

On January 26, this court granted Sterling Homes's motion to supplement the record on appeal with three documents pertaining to the state-court suit. These documents reflect a November 29, 2016 partial summary judgment against Espinoza on Sterling Homes's negligence claim, a damages award totaling $1,281,447.45 in connection with that judgment, and a January 4, 2017 dismissal without prejudice of all of Sterling Homes's other claims against Espinoza.

## JURISDICTION

Federal subject matter jurisdiction based on diversity exists under 28 U.S.C. § 1332. The Syndicate has demonstrated that its sole underwriting member is a British corporation, so it carries United Kingdom citizenship for purposes of federal diversity jurisdiction. Sterling Homes and Espinoza are Texas citizens. The Syndicate bears sole responsibility for the risk insured by Espinoza's Lloyd's policy, and the amount of potential insurance coverage in controversy in this case greatly exceeds $75,000.

The district court entered a final judgment in favor of the Syndicate on June 22, 2016. Sterling Homes timely noticed its appeal on July 13, 2016. This court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARD OF REVIEW

"This court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court." *Johnson v. World All.*

*Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016). "Interpretation of an insurance contract is a question of law . . . reviewed *de novo*" on appeal from summary judgment. *Tesoro Ref. & Mktg. Co., L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 833 F.3d 470, 473 (5th Cir. 2016).

"Summary judgment is appropriate if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Johnson*, 830 F.3d at 195 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) and Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "On a motion for summary judgment, this Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* (quoting *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009)) (brackets omitted).

## DISCUSSION

### I.    Choice of law

"In a diversity case involving the interpretation of a contract, we apply the substantive law of the forum state, including its choice-of-law rules." *McLane Foodservice, Inc. v. Table Rock Restaurants, L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013). The district court applied Texas rules of contract interpretation, and the parties do not contest the application of Texas law in their appellate briefing.

"This court reviews *de novo* a district court's choice of law determination," *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004), and we agree with the district court's decision to apply Texas law. "Texas courts use the 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws (1971) for all choice of law cases except contract cases in which the parties have agreed to a valid choice of law

clause." *Id.* (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420–21 (Tex. 1984)). The parties point to no choice of law clause in the Lloyd's policy, and Texas has the most significant relationship to this dispute.[1] Espinoza, a Texas citizen, purchased his Lloyd's policy in connection with his subcontract for work on a Texas construction project. Although we attribute U.K. citizenship to the Syndicate, it has not suggested that English law should bear on the interpretation of Espinoza's policy. We therefore analyze the Lloyd's policy under Texas law.

## II. Texas principles of interpretation

"Under Texas law, we interpret insurance policies using the same rules of interpretation and construction applicable to contracts generally." *Tesoro*, 833 F.3d at 474 (citing *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). The policy "should be interpreted as a whole and in accordance with the plain meaning of its terms." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 892 (Tex. 2017). "We must construe the policy such that no provision is rendered meaningless." *Tesoro*, 833 F.3d at 474 (citing *Schaefer*, 124 S.W.3d at 157). "If an insurance contract 'is worded so that it can be given

---

[1] "Section 6 of the Restatement lists several general factors to be used by courts in making choice of law determinations:

a) the needs of the interstate and international systems;

b) the relevant policies of the forum;

c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

d) the protection of justified expectations;

e) the basic policies underlying the particular field of law;

f) certainty, predictability, and uniformity of result; and

g) ease in determination and application of the law to be applied."

*Id.* at 403–04 (citing Restatement (Second) of Conflict of Laws § 6(2) (1971)).

a definite or certain legal meaning, then it is not ambiguous.'" *Id.* (quoting *Schaefer*, 124 S.W.3d at 157) (alterations omitted).

In Texas, "[t]he goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used." *Primo*, 512 S.W.3d at 893. "'Plain meaning' is a watchword for contract interpretation because word choice evinces intent." *Id.* Texas law "refuse[s] to insert language or provisions the parties did not use or to otherwise rewrite private agreements." *Id.*

"Any disagreement about the meaning of the contract does not render it ambiguous; instead, the contract must be 'susceptible to two or more reasonable interpretations.'" *Tesoro*, 833 F.3d at 474 (quoting *Schaefer*, 124 S.W.3d at 157). "[A] contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Id.* (quoting *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 119 (Tex. 2015)). "If we determine a contract is ambiguous, we must adopt the interpretation favoring the insured." *Id.* (citing *RSUI Indem.*, 466 S.W.3d at 118). "Whether an insurance contract is ambiguous is a question of law." *Id.* (citing *Schaefer*, 124 S.W.3d at 157).

"If an insurer relies on a policy's exclusions to deny that it has a duty to defend, 'it bears the burden of proving that one or more of those exclusions apply.'" *Fed. Ins. Co. v. Northfield Ins. Co.*, 837 F.3d 548, 552–53 (5th Cir. 2016) (quoting *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 692 (5th Cir. 2010)). "Courts must 'construe the exclusion narrowly, resolving any ambiguity in favor of the insured.'" *Id.* at 553 (quoting *City of Coll. Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 337 (5th Cir. 2013)).

No. 16-50892

## III.    Relevant contractual provisions

Three contractual provisions are relevant to our analysis. The first comes from Sterling Homes's subcontracting agreement with Espinoza, while the second and third appear in Espinoza's Lloyd's insurance policy.

### A. Subcontracting agreement

The subcontracting agreement between Sterling Homes and Espinoza required Espinoza to maintain an insurance policy for "General Liability." The agreement also required Espinoza to name Sterling Homes "as an additional insured" under Espinoza's policy.

In relevant part, the agreement stated:

> Prior to commencing performance of work at the Project, Subcontractor agrees to furnish and maintain in full force Certificates of Insurance until completion and a final acceptance of Subcontractor's work on the Project, at Subcontractor's sole cost and expense, as required by Sterling Custom Homes, Inc., covering Workmen's Compensation and General Liability with limits not less than $500,000/$1,000,000/$500,000 and automobile motor vehicle insurance (owned, non-owned and hired) with limits not less than $1,000,000 Combined Single Limit for bodily injury and property damage or loss. Subcontractor shall name Sterling Custom Homes, Inc. as an additional insured on all such Certificates of Insurance.

### B. Lloyd's policy's "cross suits" exclusion

Espinoza's Lloyd's policy includes a "cross suits" exclusion. The provision excludes coverage for:

> "Bodily injury", "property damage", "personal and advertising injury" or any injury, loss or damage arising out of any claim, "suit", action or other proceeding or any allegation or expense initiated or caused to be brought about by any insured covered by this policy against any other insured covered by this policy.

7

No. 16-50892

C. Lloyd's policy's "additional insured" endorsement

Espinoza's Lloyd's policy is modified by an endorsement concerning coverage for "additional insured[s]."

The endorsement states:

> Who Is An Insured (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

The "Schedule," in turn, states:

> Name of Person or Organization:
> BLANKET ADDITIONAL INSURED,
> As Per Written Contract.

## IV.    Analysis of the Policy

To avoid the cross suits exclusion, Sterling Homes argues that its state court suit against Espinoza does not present litigation between two insureds. We must therefore determine the meaning of and relationship between the Lloyd's policy's cross suits exclusion and additional insured endorsement.

A. Interpreting the cross suits exclusion

Sterling Homes argues that the cross suits exclusion is ambiguous because it does not specify whether it applies to both named insureds and additional insureds. We disagree. "If an insurance contract 'is worded so that it can be given a definite or certain legal meaning, then it is not ambiguous.'" *Tesoro*, 833 F.3d at 474 (quoting *Schaefer*, 124 S.W.3d at 157) (alterations omitted). Sterling Homes urges us to find ambiguity concerning whether "any insured" encompasses "additional insured[s]." But the phrase "any insured" can easily be given a "definite or certain legal meaning," *see id.*, by interpreting it to mean any party made an insured under the policy, regardless of whether the party becomes insured by purchasing the policy directly or through the additional insured endorsement.

8

No. 16-50892

Sterling Homes endeavors to avoid this plain-text conclusion by contending it would conflict with other parts of the policy. Sterling Homes relies upon the Eleventh Circuit's *Twin City* opinion, which held that applying a similar cross suits exclusion "to indemnity obligations owed by a named insured to an additional insured . . . would nullify the core of the additional insured coverage provision." *See Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1262 (11th Cir. 2007) (applying Alabama law).

Texas law, like the Alabama law at issue in *Twin City*, requires holistic interpretations. But it also counsels reliance on terms' "plain meaning." *See Primo*, 512 S.W.3d at 892 (stating that a policy "should be interpreted as a whole and in accordance with the plain meaning of its terms"). In this case, our decision to interpret the cross suits exclusion in accordance with its plain text —"any insured" means any insured entity, without regard to how the entity obtained insurance—does not nullify the policy's additional insured provision.

B. Interpreting the additional insured endorsement

We turn to the question of whether Sterling Homes was an additional insured (and thus an insured for purposes of the cross suits exclusion) when it sued Espinoza. Sterling Homes contends the additional insured endorsement only applies when Sterling Homes faces liability as a result of Espinoza's conduct. The Syndicate disagrees.

The Lloyd's policy's additional insured endorsement adds entities listed on a specific Schedule to the list of insureds, "but only with respect to liability arising out of your [i.e., Espinoza's] ongoing operations performed for that insured." The parties' interpretive dispute turns on whether the endorsement refers to Espinoza's liability or Sterling Homes's.

We conclude that the additional insured endorsement makes Sterling Homes an insured only with respect to Sterling Homes's liability arising out of Espinoza's ongoing operations for Sterling Homes. "The goal of contract

interpretation is to ascertain the parties' true intent as expressed by the plain language they used." *Primo*, 512 S.W.3d at 893. The plain language of the additional insured endorsement comports with our interpretation, and we conclude our interpretation most likely reflects the parties' true intentions. For example, our interpretation recognizes the likelihood that Espinoza, the policy's purchaser, intended to buy from the Syndicate a commercial general liability policy that provided him coverage for claims made against him by his general contractors. Similarly, nothing in the plain language of the subcontracting agreement obligating Espinoza to name Sterling Homes as an additional insured suggests the parties intended for Espinoza to lose insurance coverage in the event Sterling Homes needed to sue him.

Because we conclude Sterling Homes was not an additional insured under the Lloyd's policy with respect to its state-court litigation against Espinoza, we hold that the district court erred when it determined that the cross suits exclusion applied to that litigation.

## CONCLUSION

For the reasons set forth above, we REVERSE the district court's summary judgment ruling, VACATE the final judgment, and REMAND for further proceedings consistent with this opinion.

We have confined our review to the issues considered by the district court, and we express no opinion on the effect of other policy provisions the district court did not analyze.[2]

---

[2] The Syndicate cited no legal authority in support of its argument that the default judgment and declaration of no coverage the district court entered against Espinoza will prevent the district court from providing relief to Sterling Homes. Accordingly, we deem that argument waived. *See, e.g., In re Bouchie*, 324 F.3d 780, 786 (5th Cir. 2003) (finding briefing inadequate and an argument waived where the party "cite[d] no authority for [a] proposition").