16-906-cv
*Emp'rs Ins. Co. of Wausau v. Harleysville Preferred Ins. Co.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of April, two thousand eighteen.

PRESENT:
> ROBERT D. SACK,
> SUSAN L. CARNEY,
> CHRISTOPHER F. DRONEY,
> > *Circuit Judges.*

_____

EMPLOYERS INSURANCE COMPANY OF WAUSAU,
> *Plaintiff-Counter-Defendant-Appellant*,

> v.                                                    No. 16-906-cv

HARLEYSVILLE PREFERRED INSURANCE COMPANY,
> *Defendant-Cross-Claimant-Counter-Claimant-*
> *Appellee*,

THE TRAVELERS INDEMNITY COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,
> *Defendants-Cross-Defendants-*
> *Appellees*,

THE ELECTRICAL EMPLOYERS SELF INSURANCE SAFETY PLAN,
> *Defendant-Cross-Defendant.*

_____

FOR PLAINTIFF-COUNTER-DEFENDANT-
APPELLANT:                                    MARSHALL T. POTASHNER, Janet J. Lee,
                                              Jaffe & Asher LLP, New York, NY.


FOR DEFENDANT-CROSS-CLAIMANT-
COUNTER-CLAIMANT-APPELLEE:                    LANCE J. KALIK, Brooks H. Leonard,
                                              Riker Danzig Scherer Hyland & Perretti
                                              LLP, Morristown, NJ.


FOR DEFENDANTS-CROSS-DEFENDANTS-
APPELLEES:                                    JOANNE M. ENGELDRUM, Alan C. Eagle,
                                              Cheryl F. Korman, Rivkin Radler LLP,
                                              Uniondale, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court entered March 4, 2016, is **AFFIRMED IN PART**, **REVERSED IN PART**, **VACATED IN PART**, and **REMANDED**.

In this insurance coverage dispute among three insurers, Plaintiff-Counter-Defendant-Appellant Employers Insurance Company of Wausau ("Wausau") appeals from the District Court's entry of summary judgment in favor of Defendant-Cross-Claimant-Counter-Claimant-Appellee Harleysville Preferred Insurance Company ("Harleysville") and Defendants-Cross-Defendants-Appellees The Travelers Indemnity Company and Travelers Property Casualty Company of America (together, "Travelers"). We assume the parties' familiarity with the underlying facts and the procedural history of the case, to which we refer only as necessary to explain our decision.

**I.       Background**

This case arises from the August 5, 2014 death of Nicholas Cavataio. Mr. Cavataio was working as an electrician for Hellman Electric Corporation ("Hellman") at a construction site at the Throgs Neck Bridge in New York City, when he was struck and killed by a falling 2700-pound battery. In response to the accident, Rosanne Cavataio, his widow, filed a tort suit in New York state court in November 2014 against, as relevant here,

the Metropolitan Transportation Authority ("MTA"), the Triborough Bridge and Tunnel Authority ("TBTA"), and Monarch Electric Company ("Monarch"). In January 2015, the MTA and TBTA filed a third-party complaint against Hellman, seeking indemnification and contribution.

In the underlying state tort suit, Ms. Cavataio's allegations are set out in a complaint and a later-filed bill of particulars. The allegations are vague and open to more than one interpretation. With almost no elaboration, the complaint lists several theories of how the defendants breached their duty to operate a safe worksite, causing Mr. Cavataio's death. Ms. Cavataio also alleges that the MTA and TBTA owned and operated the worksite; that Hellman was Mr. Cavataio's employer and entered into a contract with the MTA and TBTA to provide services at the worksite; and that Monarch owned, operated, and/or leased a truck involved in the accident—a truck from which, it can be inferred from the pleadings, the battery fell. A fourth entity not named as a defendant, Miller Auto Leasing Corporation ("Miller"), also allegedly owned, operated, and/or leased the truck. The bill of particulars references, among other asserted breaches of the defendants' duties, a failure to "use the proper pallet jack for the item ('battery') being unloaded from the vehicle." J.A. 80.

The three parties in this federal suit are the liability insurers of the defendants in Ms. Cavataio's tort suit. Wausau issued Hellman a general commercial liability policy (implicated because Mr. Cavataio was a Hellman employee). Harleysville issued Hellman a commercial auto policy (implicated because a truck was involved in the death of Mr. Cavataio, a Hellman employee). Travelers issued a commercial auto policy to Consolidated Electric Distributors, Inc. ("CED"), Monarch's parent corporation, naming Monarch as an insured (implicated because of Monarch's connection to the truck involved in Mr. Cavataio's deathThe MTA and TBTA are additional insureds under all of those policies for any vicarious liability imposed on them for the other defendants' negligence.

Wausau filed this federal suit in June 2015, contending that it has been wrongfully forced to defend Hellman, the MTA, and the TBTA in Ms. Cavataio's tort suit, following Harleysville's and Travelers's disclaimers of coverage. Wausau concedes that it has a duty to defend those defendants, but it seeks a declaration that Harleysville and Travelers also have a

3

duty to defend and indemnify Hellman, the MTA, and the TBTA in the tort suit, and that their obligations are primary to Wausau's. Wausau also seeks reimbursement from Harleysville and Travelers for the defense costs it has incurred.

On October 16, 2015, Wausau moved for partial summary judgment as to the duty to defend. Wausau later moved for summary judgment also as to the reimbursement claim. Harleysville and Travelers opposed Wausau's motion and filed cross-motions for summary judgment under the theory that two coverage exclusions in their auto policies were applicable: "mechanical device exclusions" for injuries arising out of the movement of property using mechanical devices (here, the pallet jack), and "employer's liability exclusions" for injuries to the employees of certain insureds arising from their employment.

On February 29, 2016, the District Court denied Wausau's motion and granted Harleysville's and Travelers's motions. It concluded that, although Hellman, the MTA, and the TBTA were all insureds under both policies, the mechanical device exclusions applied to the circumstances of the fatal accident. The court then deemed moot any discussion of the "priority of coverage"—that is, which insurers are "primary" insurers and which are "excess" insurers. On March 3, 2016, the District Court found that Wausau's claims regarding reimbursement and the duty to indemnify necessarily failed in tandem with the duty to defend claim. It entered judgment the next day, and Wausau timely appealed.

II.    Discussion

A.    Harleysville policy

As to Harleysville's commercial auto policy issued to Hellman, for the reasons set forth below, we conclude that neither of the coverage exclusions invoked by Harleysville (the mechanical device exclusion and the employer's liability exclusion) applies to the liability that Hellman, the MTA, and the TBTA might face in Ms. Cavataio's suit—at least, not as a matter of law on the facts presented. Thus, neither exclusion relieves Harleysville of its duty to defend. We therefore reverse the District Court's judgment as to Harleysville's duty to defend the MTA, the TBTA, and Hellman.

4

### 1. Legal standards

The parties agree that New York law governs the Harleysville policy. Under New York law, "an insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991). An insurer has a duty to defend if "the allegations of the complaint are even potentially within the language of the insurance policy." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002). If an insurer invokes an exclusion clause to deny coverage, the insurer bears the burden "to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." *Id.* at 444. New York courts construe policy exclusions strictly and narrowly, and resolve any ambiguity against the insurer. *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003).

### 2. Mechanical device exclusion

The first coverage exclusion invoked by Harleysville is the "mechanical device exclusion." The exclusion precludes coverage for:

> "Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto."

J.A. 330. The parties dispute whether Mr. Cavatio's death "result[ed] from the movement of property" by the pallet jack, triggering the mechanical device exclusion. In our view, the available facts regarding the pallet jack are insufficient to determine "as a matter of law that there is no possible factual or legal basis on which [Harleysville] might eventually be obligated to indemnify" Hellman, the MTA, and the TBTA. *Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45 (1991). The District Court therefore erred in ruling that the mechanical device exclusion relieved Harleysville of its duty to defend.

As an initial matter, we address the parties' disagreement over which record materials may properly be considered in assessing the applicability of the mechanical device exclusion. Ordinarily, that assessment would turn on a comparison between the policy's language and the allegations in Ms. Cavataio's state court complaint. *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004). We may look also to Ms. Cavataio's bill of

5

particulars, which "amplif[ies] the allegations in [the] complaint" and may be "considered in determining the sufficiency of [her] plead[ings]" under New York law. *Alami v. 215 E. 68th St., L.P.*, 88 A.D.3d 924, 925 (2d Dep't 2011) (internal quotation marks omitted). Evidence extrinsic to the pleadings, however, is generally not considered in relation to the duty to defend. *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006).

Harleysville argues that New York courts have suggested an exception under which an insurer may rely on extrinsic evidence when challenging the duty to defend, namely when the insurer seeks to establish "that there is no possible factual or legal basis" for *indemnification*, and therefore no possible basis for finding a duty to defend. *Allstate*, 78 N.Y.2d at 45. Harleysville has not, however, cited any New York authority that speaks to the circumstances of this case: an insurer who seeks to avoid the duty to defend by citing extrinsic evidence related to *disputed* facts that are closely tied to the merits of the underlying suit.[1] *Cf. Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 264 (2011) (noting that the duty to defend is "broader than the duty to indemnify," and applies as long as "*any* of the claims against an insured *arguably* arise from covered events" (second emphasis added) (internal quotation marks omitted)). To the extent that New York courts recognize an exception to the rule prohibiting consideration of extrinsic evidence at the duty to defend stage, we find it inapplicable in this instance.

Ms. Cavataio's complaint is short on factual detail and difficult to translate into a coherent narrative. It references the time and location of Mr. Cavataio's death. It alleges that the defendants breached a duty to keep the worksite safe, causing Mr. Cavataio's death, that the MTA and TBTA owned and operated the worksite, and that Hellman was Mr. Cavataio's employer and entered into a contract with the MTA and TBTA to provide services at the worksite. The complaint further alleges—without explaining the connection to Mr. Cavataio's death—that both Monarch and Miller were owners, operators, lessors, and/or lessees of a vehicle with New Jersey license plate number XAP U46. The third-party

---

[1] The extrinsic evidence at issue includes reports documenting the accident, a witness deposition, and a video surveillance recording. The parties dispute what these pieces of evidence, which are ambiguous in import, do and do not prove.

6

complaint filed by the MTA and TBTA (seeking indemnification from Hellman) adds no factual allegations regarding the pallet jack's role in Mr. Cavataio's death.

The bill of particulars also lacks clarity, but it adds a few details: the accident took place at 7:45 am in a parking lot outside a service building near the bridge, and the cause of death was blunt force trauma to the head, neck, and torso, resulting in a shattered skull, a lacerated brain, and vertebral fractures. The bill of particulars lists, but does not develop at all, several theories as to why the defendants are liable, such as a failure to warn and a failure to inspect. Crucially, it references a failure to ensure that "equipment" on the New Jersey vehicle (with license plate number XAP U46) was "in good working order," as well as a failure to "use the proper pallet jack for the item ('battery') being unloaded from the vehicle," failure to unload the battery "safely and properly," failure to "use the loading dock to unload the 'battery,'" and failure to "park in a . . . safe location . . . to avoid an uneven surface for the area to unload." J.A. 80-81.

The allegations in the complaint and bill of particulars raise a reasonable possibility that Mr. Cavataio's death did not "result[] from the movement of property by a mechanical device . . . [un]attached to the covered 'auto'" (as required to trigger the mechanical device exclusion, J.A. 330), but *was* "caused by an 'accident' and result[ed] from the ownership, maintenance or use of a covered 'auto'" (as required to trigger coverage under the Harleysville policy, J.A. 328; *see also ABC, Inc. v. Countrywide Ins. Co.*, 308 A.D.2d 309, 310 (1st Dep't 2003)). To be sure, the bill of particulars alleges that a pallet jack had some role in moving a battery and (reading between the lines a bit) that at some point the battery was unloaded from the New Jersey truck improperly, resulting in Mr. Cavataio's death. But the bill of particulars still leaves open the exact sequence of events that led to Mr. Cavataio's death: when and in what manner the pallet jack was used, and whether other factors were more closely connected to the accident.

Altogether, these considerations preclude a determination as a matter of law that, by virtue of the mechanical device exclusion, Harleysville faces no coverage obligations. We therefore conclude that the District Court erred in ruling under New York law that the

7

mechanical device exclusion relieved Harleysville of its duty to defend Hellman, the MTA, and the TBTA in Ms. Cavatavio's underlying suit in state court.

### 3. Employer's liability exclusion

The second coverage exclusion invoked by Harleysville is the "employer's liability exclusion." That exclusion precludes coverage for bodily injury to:

> An "employee" of the "insured" arising out of and in the course of: (1) Employment by the "insured"; or (2) Performing the duties related to the conduct of the "insured's" business . . . . This exclusion applies: (1) Whether the "insured" may be liable as an employer or in any other capacity; and (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury. But this exclusion does not apply to . . . liability assumed by the "insured" under an "insured contract."

J.A. 329-30. Harleysville concedes that the employer's liability exclusion does not apply to Hellman, Mr. Cavataio's employer, because Hellman assumed liability "under an 'insured contract.'" Harleysville contends, however, that the exclusion applies to the MTA and TBTA, even though Mr. Cavataio was not employed by either entity. It argues that "[a]n 'employee' of the 'insured'" refers to an employee of Hellman, who is the primary insured named in the declarations, regardless of which additional insureds (here, the MTA and TBTA) might be seeking coverage. We disagree and conclude that the employer's liability exclusion does not relieve Harleysville of its duty to defend the MTA and TBTA.

It is significant that the exclusion refers to "*the* insured," rather than "an insured" or "the named insured." For the latter two wordings, the reference would always include Hellman, who is the named insured and, of course, *an* insured. The phrase "the insured," however, is not conducive to the same reading, because it refers to a specific insured while not necessarily referring to the named insured. *See Endurance Am. Specialty Ins. Co. v. Century Sur. Co.*, 630 F. App'x 6, 8 (2d Cir. 2015) (summary order); *Fulmont Mut. Ins. Co. ex rel. Hutchinson v. N.Y. Cent. Mut. Fire Ins. Co.*, 4 A.D.3d 724, 725-26 (3d Dep't 2004); *see also Greaves v Pub. Serv. Mut. Ins. Co.*, 5 N.Y.2d 120 (1959). It is reasonable to read "the insured" to refer solely to whichever insured is seeking coverage: in this instance, the MTA and the TBTA. This reading is supported further by the Harleysville policy's general provision that

8

"the coverage afforded applies separately to each [individual] insured who is seeking coverage or against whom a claim or 'suit' is brought." J.A. 336.

Thus, because Mr. Cavataio was not an employee of the MTA or TBTA, the employer's liability exclusion does not excuse Harleysville from defending the MTA and TBTA in Ms. Cavatavio's underlying suit in state court.

### B.     Travelers policy

Turning to the commercial auto policy that Travelers issued to Monarch, we find the policy's mechanical device exclusion inapplicable here, for substantially the same reasons the corresponding Harleysville exclusion does not apply. As to the Travelers duty to defend Hellman, however, the policy's exclusion for employer's liability does apply. Travelers therefore has a duty to defend the MTA and TBTA but not a duty to defend Hellman. Accordingly, we reverse the District Court's judgment as to Travelers's duty to defend the MTA and TBTA and affirm the judgment as to Travelers's duty to defend Hellman.

### 1.     Legal standards

The parties agree that Texas law governs the Travelers policy.[2] Under Texas law, "[i]f an insurer relies on a policy's exclusions to deny that it has a duty to defend, it bears the burden of proving that one or more of those exclusions apply." *Fed. Ins. Co. v. Northfield Ins. Co.*, 837 F.3d 548, 552-53 (5th Cir. 2016) (internal quotation marks and citation omitted). "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). A court should "resolve all doubts regarding the duty to defend in favor of the duty." *Id.* When an exclusion is ambiguous, we must adopt a "reasonable" interpretation that favors coverage, "even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010) (internal quotation marks omitted).

---

[2] Although Wausau argued otherwise in its brief, it conceded the point at oral argument.

9

### 2. Mechanical device exclusion

Travelers, like Harleysville, contends that it avoids any duty to defend Hellman, the MTA, and the TBTA because of a provision in its policy excluding coverage for injuries resulting from the movement of property by a mechanical device. The exclusion is worded identically to the corresponding Harleysville exclusion, and the parties have made substantially the same arguments with respect to both policies' mechanical device exclusions. We are again unconvinced by the argument that the exclusion eliminates the duty to defend under the circumstances presented here.

Applying Texas law requires only modest changes to our analysis and does not alter our conclusions. Our approach to the facts is the same for Travelers as for Harleysville. Texas courts, like those in New York, generally determine the duty to defend based on only the allegations in the underlying suit against the insured (which here includes the bill of particulars), with limited exceptions not applicable here. *See Burlington N. & Santa Fe Ry. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 334 S.W.3d 217, 219 (Tex. 2011) ("[T]he determination as to duty to defend is according to the eight-corners rule wherein only the pleadings and the policy language are considered."); *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308-09 (Tex. 2006) (observing that other courts have recognized only a "very narrow" exception for extrinsic evidence and that, if Texas were to adopt this exception, it would not allow evidence overlapping with merits of underlying suit).

We think that under Texas law, the allegations regarding Mr. Cavataio's death leave open the question whether his death "result[ed] from" the movement of the battery by the pallet jack. For Wausau to prevail on this issue, it need only persuade us that the mechanical device exclusion will "potentially" be found inapplicable in Ms. Cavataio's underlying suit, after we resolve "all doubts regarding the duty to defend in favor of the duty" and "construe the pleadings liberally." *Zurich Am.*, 268 S.W.3d at 491. Wausau has achieved that much.

We therefore conclude that the District Court erred in ruling that the mechanical device exclusion relieved Travelers of its duty to defend Hellman, the MTA, and the TBTA in Ms. Cavatavio's underlying suit in state court.

### 3.     Employer's liability exclusion

Travelers also argues that the employer's liability exclusion contained in its policy (an exclusion with the same wording as the corresponding Harleysville provision) applies to Hellman because Hellman was Mr. Cavataio's employer but not a *named* insured under the Travelers policy, and therefore Hellman could not be excepted from the exclusion by virtue of having assumed tort liability "under an 'insured contract.'" The text of the policy supports Travelers's position.

Although the employer's liability exclusion uses the word "insured" to refer to both named and additional insureds, an "insured contract" is defined, in relevant part, as a contract "under which *you* assume the tort liability of another." J.A. 363 (emphasis added). "You," in turn, is defined as "the Named Insured shown in the Declarations"—meaning Monarch, not Hellman. J.A. 346, 353. In other words, Hellman is an "insured" who employed Mr. Cavataio and, accordingly, falls within the reach of the employer's liability exclusion, but Hellman is not the named insured and thus is outside the reach of the exception for tort liability assumed from another under contract.

Although the District Court relied erroneously on the mechanical device exclusion in ruling that Travelers had no duty to defend Hellman, we affirm this portion of the District Court's judgment on the alternative ground that the employer's liability exclusion relieved Travelers of its duty to defend Hellman.[3]

### C.     Priority of coverage

Finally, the parties ask us to resolve a dispute about the priority of coverage: which among them are "primary" insurers and which are "excess" insurers. This is determined "by comparison of their [policies'] respective 'other insurance' clauses." *Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, PA*, 878 N.Y.S.2d 339, at 344 (1st Dep't 2009); *accord St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 209 (5th Cir. 1996).

Harleysville does not dispute that it is a primary insurer for Hellman: its policy's "other insurance" clause provides for primary insurance for liability, like Hellman's, "assumed under an 'insured contract.'" J.A. 335. As to the MTA and TBTA, however,

---

[3] Because the Travelers employer's liability exclusion applies to Hellman, we need not reach Travelers's additional argument that Hellman is excluded from the policy's definition of "insureds."

Harleysville is an excess insurer: the "other insurance" clause provides excess insurance for autos not owned by Hellman, and the "insured contract" exception does not apply to the MTA and TBTA.

Travelers's obligation to the MTA and TBTA is as a primary insurer, because the truck qualifies as an auto that Monarch "own[s]." J.A. 361. Endorsements to the Travelers policy could reasonably be interpreted to provide that an auto "hired" by Monarch by written contract "will be considered an 'auto' [Monarch] own[s]," J.A. 365, as will an auto leased for twelve months or more under a contract requiring Monarch to provide primary insurance for the lessor, J.A. 366-68.

Travelers contends that Wausau, too, is a primary insurer for the MTA and TBTA, and we agree. Wausau would generally provide excess insurance for losses arising out of the use of an auto. But an endorsement to the Wausau policy makes Wausau a primary insurer for certain listed organizations, including the MTA and TBTA, if Hellman enters into an agreement with those organizations promising to provide primary insurance. Under its construction contract with the MTA/TBTA, Hellman is required to provide primary insurance. The intended scope of the endorsement—whether it was meant to apply to the Throgs Neck Bridge project—is unclear, but the ambiguity on this point should be resolved against Wausau, the insurer that drafted it. We therefore conclude that both Travelers and Wausau are primary insurers of the MTA and TBTA and must share coverage obligations *pro rata* in accordance with their policies' "other insurance" provisions.

### D. The duty to indemnify and Wausau's defense costs

The District Court also ruled that Harleysville and Travelers had no duty to indemnify Hellman, the MTA, and the TBTA, and denied Wausau's motion for summary judgment as to the defense costs owed by Harleysville and Travelers. Because those decisions were premised on the District Court's conclusions about the duty to defend, we vacate those portions of the judgment.

\* \* \*

Accordingly, as to Harleysville's duty to defend Hellman, the MTA, and the TBTA we **REVERSE** the District Court's judgment in favor of Harleysville, with directions to

12

enter judgment in favor of Wausau. As to Travelers's duty to defend Hellman, we **AFFIRM** the District Court's judgment in favor of Travelers. As to Travelers's duty to defend the MTA and TBTA, we **REVERSE** the District Court's judgment in favor of Travelers, with directions to enter judgment in favor of Wausau. As to the priority of coverage among the policies, we **VACATE** the District Court's judgment, with directions to enter judgment consistent with this order. As to Harleysville's and Travelers's duty to indemnify and as to Wausau's motion for summary judgment regarding the defense costs owed by Harleysville and Travelers, we **VACATE** the District Court's judgment and **REMAND** the cause for further proceedings consistent this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13